UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
VICINAGE OF CAMDEN

| | | |
|---|---|---|
| SANDRA KENDRICK, ET AL. | : | HON. Robert J. Kugler, U.S.D.J. |
| | : | HON. Ann Marie Donie, U.S.M.J. |
| | : | |
| Plaintiffs, | : | Civil Action No. 21-6231 |
| v. | : | |
| | : | |
| GURBIR S. GREWAL, | : | |
| in his official capacity as | : | |
| Attorney General | : | |
| of New Jersey, et al. | : | |
| | : | |
| Defendants. | : | |

_____

BRIEF IN SUPPORT OF DEFENDANTS GURBIR S. GREWAL AND
PATRICK J. CALLAHAN'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1)

_____

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY
Attorney for Defendants
R.J. Hughes Justice Complex
P.O. Box 112
Trenton, New Jersey 08625
(609) 376-2440

Alec Schierenbeck
Deputy State Solicitor

Joseph C. Fanaroff
Assistant Attorney General

Stephanie M. Mersch
Deputy Attorney General
 On the Brief

TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT..............................................................................1

STATEMENT OF FACTS AND PROCEDURAL
HISTORY..........................................................................................................3

    A. New Jersey's Firearms Permitting Laws....................................................3

    B. New Jersey's Permit Modernization Efforts…..........................................6

    C. Regulations on Commercial Sellers...........................................................8

    D. Procedural History...................................................................................10

LEGAL STANDARD…………………………………………….......................10

ARGUMENT.......................................................................................................11

    I.    THE INDIVIDUAL PLAINTIFFS LACK STANDING TO
        CHALLENGE NEW JERSEY'S PERMITTING
        LAWS…………………………………………………...……..12

    II.    THE ASSOCIATION PLAINTIFFS LACK STANDING TO
        CHALLENGE NEW JERSEY'S PERMITTING LAWS .................15

        A. The Association Plaintiffs Lack Standing to Bring Claims on Behalf
            of Their Members .....................................................................15

        B. The Association Plaintiffs Lack Standing to Bring Claims on Behalf
            of Themselves ..........................................................................17

    III.    BOB'S LITTLE SPORT SHOP LACKS STANDING TO
        CHALLENGE NEW JERSEY'S PERMITTING LAWS .................21
        A.   Bob's Does Not Suffer An Injury In Fact As A Result of the
            Permitting Laws.......................................................................21

        B. Bob's Little Sports Shop Lacks Standing to Bring Claims on Behalf
            of its Third-Party Customers ...................................................25

CONCLUSION....................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Riga*,
  208 F.3d 419 (3d Cir. 2000) ...............................................................20

*Allen v. Wright*,
  468 U.S. 737 (1984) ...........................................................................13

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
  671 F.3d 140 (2d Cir. 2011) ...............................................................11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...........................................................................11

*Ballentine v. United States*,
  486 F.3d 806 (3d Cir. 2007) ...............................................................10

*Blunt v. Lower Merion Sch. Dist.*,
  767 F.3d 247 (3d Cir. 2014) ...............................................................17

*Clapper v. Amnesty Intern. USA*,
  568 U.S. 398 (2013) ...........................................................................23

*Common Cause of Pa. v. Pennsylvania*,
  558 F.3d 249 (3d Cir. 2009) .........................................................15, 16

*Craig v. Boren*,
  429 U.S. 190 (1976) ...............................................................26, 27, 28

*Davis v. Federal Election Com'n*,
  554 U.S. 724 (2008) ...........................................................................24

*Donald J. Trump for President, Inc. v. Way*,
  492 F. Supp. 3d 254 (D.N.J. 2020).....................................................15

*Fair Emp't Council of Greater Washington, Inc. v. BMC Mktg. Corp.*,
  1268, 1276 (D.C. Cir. 1994).............................................................18

*Finkelman v. National Football League*,
  810 F.3d 187 (3d Cir. 2016) .........................................10, 11, 22, 23

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982) ....................................................................17, 20

*Hong Kong Supermarket v. Kizer*,
  830 F.2d 1078 (9th Cir. 1987) ....................................................28, 29

*Jackson-Bey v. Hanslmaier*,
  115 F.3d 1091 (2d Cir. 1997) ...........................................................12

*June Med. Servs. LLC v. Russo*,
  140 S. Ct. 2103 (2020) ...............................................................26, 28

*Kowalski v. Tesmer*,
  543 U.S. 125 (2004) .............................................................25, 26, 27

*Lane v. Holder*,
  707 F.3d 668 (4th Cir. 2012) .............................................................18

*Lehon v. City of Atlanta*,
  242 U.S. 53 (1916) ...........................................................................13

*Libertarian Party of Erie Cnty. v. Cuomo*,
  976 F.3d 106 (2d Cir. 2020) .............................................................14

*Lujan v. Defs. Of Wildlife*,
  504 U.S. 555 .............................................................11, 12, 14, 24

*Madsen v. Boise State Univ.*,
  976 F.2d 1219 (9th Cir. 1992) .....................................................12, 13

*Maryland Shall Issue, Inc. v. Hogan*,
  16-cv-3311 (D. Md. Apr. 4, 2019)…………………………………………………19

*Maryland Shall Issue, Inc. v. Hogan*,
  971 F.3d 199 (4th Cir. 2020) .........................................19, 23, 27, 28

*Maryland Shall Issue, Inc. v. Hogan*,
  353 F. Supp. 3d 400 (D.Md. 2018)……………………………………............. 19

*Maryland Shall Issue, Inc. v. Hogan*,
  963 F.3d 356 (4th Cir. 2020) .............................................................19

*Moose Lodge No. 107 v. Irvis*,
 407 U.S. 163 (1972) ........................................................................................13

*NAACP v. City of Kyle*,
 626 F.3d 233 (5th Cir. 2010) .....................................................................20, 21

*Pa. Prison Soc. v. Cortes*,
 508 F.3d 156 (3d Cir. 2007) .................................................................15, 18, 20

*Powers v. Ohio*,
 499 U.S. 400 (1991) ........................................................................................25

*Safari Club Intern. v. Jewell*,
 84 F.3d 1280 (D.C. Cir. 2016) ....................................................................13, 14

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*,
 678 F.3d 235 (3d Cir. 2012) ......................................................................10, 11

*Secretary of State v. Joseph H. Munson Co.*,
 467 U.S. 947 (1984) ........................................................................................29

*Sierra Club v. Morton*,
 405 U.S. 727 (1972) ........................................................................................18

*Simon v. Eastern Ky. Welfare Rights Org.*,
 426 U.S. 26 (1976) ....................................................................................12, 18

*Southern Blasting Servs., Inc. v. Wilkes Cnty., NC*,
 288 F.3d 584 (4th Cir. 2002) ...........................................................................13

*Spokeo, Inc. v. Robbins*,
 136 S.Ct. 1540 (2016) ................................................................................16, 22

*Sprint Commc'ns Co. LP v. APCC Servs., Inc.*,
 554 U.S. 269 (2008) ........................................................................................24

*Summers v. Earth Island Inst.*,
 555 U.S. 488 (2009) ........................................................................................17

*Taliaferro v. Darby Tp. Zoning Bd.*,
 458 F.3d 181 (3d Cir. 2006) .............................................................................26

*Tenth Street Residential Assoc. v. City of Dallas, Tex.*,
   968 F.3d 492 (5th Cir. 2020) .........................................................................20, 21

*United Food & Comm'l Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544 (1996) .................................................................16

*United States v. DeCastro*,
   682 F.3d 160 (2d Cir. 2012) .........................................................................13, 14

*United States v. Richardson*,
   418 U.S. 166 (1974) ...........................................................................................12

*Warth v. Seldin*,
   422 U.S. 490 (1975) ...........................................................................................25

*Westfall v. Miller*,
   77 F.3d 868 (5th Cir. 1996) .........................................................................14, 15

## Constitutional Provisions

U.S. Const. amend. II ...................................................................................... 24

U.S. Const. amend. XIV .................................................................................. 24

## Statutes

N.J. Stat. Ann. § 2C:58-3 ...................................................................................3

N.J. Stat. Ann. § 2C:58-3(a)(1) .........................................................................9

N.J. Stat. Ann. § 2C:58-3(a)(3) .........................................................................9

N.J. Stat. Ann. § 2C:58-3(a)(3)(b) ................................................................9, 24

N.J. Stat. Ann. § 2C:58-3(b) ..........................................................................3, 24

N.J. Stat. Ann. § 2C:58-3(c) ...........................................................................3, 4

N.J. Stat. Ann. § 2C:58-3(c)(1)-(10) ...............................................................4, 5

N.J. Stat. Ann. § 2C:58-3(d) ..............................................................................4

N.J. Stat. Ann. § 2C:58-3(e) ..............................................................................4

N.J. Stat. Ann. § 2C:58-3(f)...............................................................................5

N.J. Stat. Ann. § 53:1-20.6 .................................................................6

**Other Authorities**

27 CFR § 478.102(a) ........................................................................9

27 CFR § 478.121(b) ........................................................................9

27 CFR § 478.124(a) .....................................................................9, 24

ATF, Apply for a License, *available at*
    https://www.atf.gov/firearms/apply-license ...................................8

ATF, Is There A Charge for NICS Checks? *available at*
    https://www.atf.gov/firearms/QA/there-charge-nics-checks.........................6, 7

Attorney General Directive 2016-4, *available at*
    https://www.nj.gov/oag/dcj/agguide/directives/2016-4_Permits-to-
    Carry-Firearms_Directive.pdf .......................................................7

Department of Justice, *Application for Federal Firearms License,*
    *available at* https://www.atf.gov/file/61506/download .......................8

FBI, NICS Participation Map, *available at* https://www.fbi.gov/file-
    repository/nics-participation-map.pdf ............................................6

Handgun Purchase Permit, *available at* https://njportal.com/njsp/fars ..............7, 8

N.J. Admin. Code § 13:54 ...................................................................3

N.J. Admin. Code § 13:54-1.3(a)-(b) ........................................................9

N.J. Admin. Code § 13:54-1.12 ..............................................................5

N.J. Admin. Code § 13:54-1.15 ..............................................................5

N.J. Admin. Code § 13:54-3.3 ...............................................................9

N.J. Admin. Code § 13:54-3.14(a) .......................................................9, 24

N.J. Admin. Code § 13:59-1.3(j)............................................................6

State of New Jersey, Application for Retail Firearms Dealer's
    License, *available at* http://www.njsp.org/firearms/pdf/sp-649.pdf ...................9

## **PRELIMINARY STATEMENT**

New Jersey—like many other states, as well as the federal government—has enacted measures to ensure that people who are prohibited by law from buying firearms are not able to do so.  To reduce the risk that such individuals purchase deadly weapons, New Jerseyans who want to buy a rifle, shotgun, or handgun must first obtain certain permits.  The process of obtaining permits is simple: a person fills out a modest form that allows law enforcement to do a basic criminal and mental health background check and confirm that the applicant is not statutorily disqualified from owning a firearm.  First-time applicants also submit fingerprints, which are crosschecked against state and federal databases.  Commercial sellers of firearms, in turn, are generally prohibited from selling firearms to those that lack the necessary qualifications.  But once the necessary permits are obtained, a person can freely purchase firearms at licensed sellers.

The instant complaint was brought on behalf of three New Jersey residents, five associations they are members of, and a commercial seller of firearms in New Jersey.  Each of the plaintiffs asserts that New Jersey's firearm permitting laws violate the Second Amendment.  But as this motion explains, none of the plaintiffs has standing to bring such a challenge.  As a result, this Court lacks subject-matter jurisdiction, and this action must be dismissed under Federal Rule of Civil Procedure 12(b)(1).

While Sandra Kendrick, Carol Kinkade, Nancy Merritt (collectively, "Individual Plaintiffs") challenge the legality of New Jersey's permitting laws, none has even attempted to go through the permitting process. Under blackletter law, a plaintiff lacks Article III standing to challenge a permitting scheme where she has never even applied for a permit, much less been denied one. Here, that rule requires dismissal of the Individual Plaintiffs' claims.

The Association of New Jersey Rifle and Pistol Clubs, Inc. ("ANJRPC"), the New Jersey Second Amendment Society ("NJSAS"), the Coalition of New Jersey Firearm Owners ("CNJFO"), the Firearms Policy Coalition, Inc. ("FPC"), and the Second Amendment Foundation ("SAF") (collectively, "Association Plaintiffs") fare little better. Because their identified members—the Individual Plaintiffs—lack standing, these organizations cannot assert so-called "associational" standing on their members' behalf. Nor can these organizations establish standing based on injuries to themselves as organizations, as courts have consistently held that a group's decision to expend resources on a public-policy issue does not give it Article III standing to challenge government action. Indeed, for this reason, courts have recently rejected similar attempts by advocacy organizations to assert standing to challenge state firearms regulations.

Finally, Bob's Little Sports Shop, Inc. ("Bob's"), an incorporated firearms seller, also lacks standing to challenge New Jersey's permitting laws. Because Bob's

2

fails to plausibly allege that New Jersey's laws cause it economic injury, it does not have Article III standing to challenge those laws in its own right. And without Article III standing on its own, Bob's cannot assert standing to represent the interests of its third-party customers. Even if Bob's had Article III standing, moreover, Bob's would not satisfy the requirements of third-party standing doctrine because its customers are capable of bringing their own claims, these customers are the natural parties to do so, and because Bob's interests and those of its customers diverge.

For these reasons, the Complaint should be dismissed in its entirety.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

A.    New Jersey's Firearms Permitting Laws

In New Jersey, a person who wants to purchase a rifle or shotgun needs to first obtain a Firearms ID Card ("FID"). N.J. Stat. Ann. § 2C:58-3(b). A person who wishes to purchase a handgun must obtain both an FID and a different permit, known as a Handgun Purchase Permit ("HPP"). N.J. Stat. Ann. § 2C:58-3(c). The procedures for obtaining an FID and an HPP are governed by statute and regulation. *See* N.J. Stat. Ann. § 2C:58-3; N.J. Admin. Code § 13:54. Both an FID and an HPP can be obtained simultaneously, using a single form. ECF 1 Ex. 1 (New Jersey State Police Application for Firearms Purchaser Identification Card and/or Handgun Permit Purchase, Form S.T.S. 033).

Under New Jersey law, FIDs and HPPs must "not be denied" to persons of "good character and good repute in the community" unless they are "subject to" one or more statutory disqualifiers.  N.J. Stat. Ann. § 2C:58-3(c).  These disqualifiers include, among other things, prior domestic-violence convictions, *id.* § (c)(1), prior confinement for a mental disorder, *id.* § (c)(3), and presence on the Terrorist Watchlist, *id.* § (c)(9).

An application for an FID and/or HPP is submitted to the "chief of police of an organized full-time police department of the municipality where the applicant resides," or, with the Superintendent of the New Jersey State Police if the person resides in a municipality where the State Police has patrol responsibility.  N.J. Stat. Ann. § 2C:58-3(d).

Applications for FIDs and HPPs are "in a form prescribed by the superintendent."  N.J. Stat. Ann. § 2C:58-3(e).  But application forms are required by statute to include certain personal identifying information—such as the applicant's name, residence, date of birth—as well as questions designed to determine if the applicant is subject to one or more of the automatic statutory disqualifiers.  *Id.*; *see also* N.J. Stat. Ann. § 2C:58-3(c)(1)-(10).  Reviewing agencies are also required to obtain fingerprints from first-time applicants, which agencies check against "any and all records of fingerprints in the municipality and county in

4

which the applicant resides and also the records of the State Bureau of Investigation and the Federal Bureau of Investigation." *Id*.

Applying for an HPP costs two dollars and applying for an FID costs five dollars.  N.J. Stat. Ann. § 2C:58-3(f).  Upon receipt and payment of the fee, the applicable law enforcement agency is required to "investigate" the application and, "unless good cause for the denial thereof appears . . . grant the permit or the identification card, or both . . . within 30 days from the date of receipt of the application for residents of this State and within 45 days for nonresident applicants." *Id*.  FIDs are valid unless and until "such time as the holder becomes subject to any of the disabilities set forth [in N.J. Stat. Ann. § 2C:58-3(c)(1)-(10)] . . ." *Id*.  An HPP, for its part, lasts for 90 days from the date of issuance and can be extended for another 90 days for "good cause." *Id*.

Applicants who are denied an FID or HPP can request a hearing "in the Superior Court of the county in which he or she resides" within 30 days after denial. N.J. Admin. Code § 13:54-1.12.  Applications for FIDs and/or HPPs, background investigations, and "any document reflecting the issuance or denial" of an FID or HPP are considered confidential and not subject to public disclosure "except on the request of persons acting in their governmental capacities for purposes of the administration of justice."  N.J. Admin. Code § 13:54-1.15.

Other fees associated with applying for an FID and/or HPP are set by statute or regulation.  For example, the Superintendent of the State Police has the authority to allow a private entity to "secur[e] applicant fingerprint images" and "assess[] a fee which has been established under the contract between the private entity and the State."  N.J. Admin. Code § 13:59-1.3(j).  New Jersey is also a designated "point of contact" state for the purposes of the National Instant Check System ("NICS")—the federal system that conducts background checks on those who wish to own a firearm or explosive.  *See* FBI, NICS Participation Map, *available at* https://www.fbi.gov/file-repository/nics-participation-map.pdf.  As a point of contact state, federal firearms licensees—individuals or companies with a federal license to engage in the sale of firearms—contact state law enforcement directly in order to perform a federal NICS check.  *Id.*  While the FBI does not charge a fee for conducting a NICS check, "states that act as points of contact for NICS checks may charge a fee consistent with state law."  Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), Is There A Charge for NICS Checks?, *available at* https://www.atf.gov/firearms/QA/there-charge-nics-checks.  In New Jersey, that fee is fifteen dollars.  N.J. Stat. Ann. § 53:1-20.6.[1]

B.    New Jersey's Permit Modernization Efforts

---

[1] The statute sets the fee at "no more than $18."

In 2016, then-Acting Attorney General Robert Lougy issued Attorney General Law Enforcement Directive 2016-4 ("AG Directive"),[2] in part in response to a 2015 report on the state of firearms purchasing and permitting in New Jersey.  *See* AG Directive at 1.  The AG Directive confirmed that permit applications should be approved "as expeditiously as practicable" so that applicants can "exercise their lawful rights under New Jersey law." *Id.* at 2.  And the Directive sought to "identify best practices that will allow agencies to establish processes that employ the most effective and efficient technology and standard operating procedures as practicable in reviewing permit applications and approving [FIDs and HPPs] for qualified applicants." *Id.* at 1.

One outgrowth of the AG Directive is the State Police's online portal, known as the Firearms Application and Registration System ("FARS").  *See* New Jersey State Police, Application for Firearms Purchaser Identification Care and/or Handgun Purchase Permit, *available at* https://njportal.com/njsp/fars.  The FARS system allows applicants for FIDs and/or HPPs to submit the necessary forms electronically, as well as schedule any fingerprinting appointments online. *Id.*

As the FARS system has expanded, additional efforts have been made to expedite the application process.  Effective October 1, 2020, applicants for HPPs

---

[2] *Available at* https://www.nj.gov/oag/dcj/agguide/directives/2016-4_Permits-to-Carry-Firearms_Directive.pdf.

began to receive an email that can "serve[s] as necessary documentation for handgun permit execution"—*i.e.* an electronic HPP.  *Id.*  And effective April 1, 2021, applicants for FIDs now receive an approval email that includes a link allowing them to "download and print an Electronic Purchaser Identification Card, also known as a "E-FID."  *Id.*  The HPP approval and E-FID obviate the need for any applicant to appear at the issuing police department to receive paper versions of these documents. *Id*.

C.    Regulations on Commercial Sellers

Separate and apart from any New Jersey state-law requirements, in order to be a commercial seller of firearms in the United States, a business must first obtain a Federal Firearms License ("FFL").  To obtain an FFL, applicants must fill out a form and pay a $200 fee.  Department of Justice, *Application for Federal Firearms License*, *available at* https://www.atf.gov/file/61506/download.  The form requires applicants to provide a variety of personally identifiable information, including their name, social security number, current address, sex, height, weight, and hair color. *Id*.  In addition, applicants must answer a variety of questions, such as whether they have ever been indicted or convicted of a felony or an act of domestic violence.  *Id.* Applicants are also subject to a criminal background check and are interviewed in person by investigators from the ATF.  *See* ATF, Apply for a License, *available at* https://www.atf.gov/firearms/apply-license.

Once licensed, holders of FFLs are subject to a number of federal requirements that are identical to those imposed by New Jersey law. *Compare* 27 CFR § 478.102(a), *with* N.J. Stat. Ann. § 2C:58-3(a)(3) (both requiring commercial seller of firearms to conduct a NICS check prior to completing a sale); *compare* 27 CFR § 478.121(b), *with* N.J. Stat. Ann. § 2C:58-3(a)(3)(b) (both allowing law enforcement officers to conduct inspections during normal business hours); *compare* 27 CFR § 478.124(a), *with* N.J. Admin. Code § 13:54-3.14(a) (both requiring commercial sellers of firearms to maintain a record of every firearm sale).

Businesses who wish to sell firearms in New Jersey must also obtain a state license to do so. N.J. Admin. Code § 13:54-3.3. Applicants must fill out New Jersey State Police Form SP-649A, which, like the federal license application, requires individuals to provide certain personally identifiable information as well answer questions related to eligibility. *See* State of New Jersey, Application for Retail Firearms Dealer's License, *available at* http://www.njsp.org/firearms/pdf/sp-649.pdf.

Both federal and state law require a commercial seller to conduct a NICS check at the point of sale. Under New Jersey law, a commercial seller is also generally prohibited from making a sale to anyone who does not possess an FID (for rifles and shotguns) and/or an HPP (handguns). N.J. Stat. Ann. § 2C:58-3(a)(1); 2C:58-3(b)(1); *see also* N.J. Admin. Code § 13:54-1.3(a)-(b).

9

D.    Procedural History

On March 21, 2021, plaintiffs filed a one-count complaint alleging that New Jersey's statutory and regulatory procedures for obtaining an FID and/or HPP violate the Second Amendment to the U.S. Constitution.   ECF No. 1.   Plaintiffs seek injunctive and declaratory relief.  *Id.*  Defendants now move to dismiss this action for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

## LEGAL STANDARD

Under Rule 12(b)(1), "a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim."   *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). "[B]ecause standing is a jurisdictional matter," "[a] motion to dismiss for want of standing is … properly brought pursuant to Rule 12(b)(1)."  *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).

In assessing whether a plaintiff has met its burden to establish standing on a motion to dismiss, courts "must only consider the allegations of the complaint." *Schering*, 678 F.3d at 243; *see Ballentine*, 486 F.3d at 810 (plaintiff has the burden of establishing the elements of standing).   In doing so, courts "eliminate from consideration any allegations that, "because they are no more than conclusions, are not entitled to the presumption of truth."  *Finkelman v. National Football League*,

810 F.3d 187, 194 (3d Cir. 2016) (quoting *Schering,* 678 F.3d at 243).  "'[W]here there are well-pleaded factual allegations, [courts] assume their veracity and determine whether they plausibly establish the prerequisites of standing."  *Id.* (quoting *Schering*, 678 F.3d at 243).  And courts remain "mindful of the Supreme Court's teaching that all aspects of a complaint must rest on 'well-pleaded factual allegations' and not 'mere conclusory statements.'"  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  "Thus, to survive a motion to dismiss for lack of standing, a plaintiff 'must allege facts that affirmatively and plausibly suggest that it has standing to sue.'"  *Id.* (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)).  "Speculative or conjectural assertions are not sufficient."  *Id.*

## ARGUMENT

To establish Article III standing, a plaintiff must have suffered an "'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) 'actual or imminent, not conjectural or hypothetical."  *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560 (internal citation omitted)*.*  The plaintiff must demonstrate "a causal connection between the injury and the conduct complained of" such that the injury is "fairly traceable to the challenged action of the defendant."  *Id.* (internal citation, quotation marks, and alterations omitted).  And "it must be 'likely,' as opposed to merely 'speculative' that the [plaintiff's] injury will be

'redressed by a favorable decision.'"  *Id.* (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)).  Because the Complaint fails to plausibly allege that Plaintiffs satisfy these threshold constitutional requirements, this action must be dismissed.

## I.    THE INDIVIDUAL PLAINTIFFS LACK STANDING TO CHALLENGE NEW JERSEY'S PERMITTING LAWS

None of the Individual Plaintiffs allege that they have suffered an injury in fact sufficient to confer Article III standing.  In the Complaint, the Individual Plaintiffs acknowledge that they have not applied for either an FID or HPP.  ECF 1 ¶¶ 10-12.  Indeed, they do not even allege an *intent* to apply for either permit.  *Id.* Nor do the Individual Plaintiffs allege that applying for either permit would somehow be futile.  *Id.*  As a result, the Individual Plaintiffs' claim of injury rests "upon an impermissible 'generalized grievance'" that is "inconsistent with 'the framework of Article III.'"  *Lujan*, 504 U.S. at 575 (quoting *United States v. Richardson*, 418 U.S. 166, 171, 176-77 (1974)).

"As a general matter, to establish standing to challenge an allegedly unconstitutional policy, a plaintiff must submit to the challenged policy."  *Jackson-Bey v. Hanslmaier*, 115 F.3d 1091, 1096 (2d Cir. 1997) (collecting cases); *see Madsen v. Boise State Univ.*, 976 F.2d 1219, 1220 (9th Cir. 1992) ("There is a long line of cases . . . that hold that a plaintiff lacks standing to challenge a rule or policy to which he has not submitted himself by actually applying for the desired benefit.").

In *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163 (1972), for example, the Supreme Court held that an African-American who never applied for membership to a club lacked standing to challenge the club's all-white membership requirement.  And in *Allen v. Wright*, 468 U.S. 737 (1984), the Supreme Court held that the parents of children who had never applied for admission to private schools with allegedly racially discriminatory admissions policies had no standing to challenge the tax-exempt status of those schools.

In the permitting context, this rule means that a plaintiff lacks Article III standing to challenge a permitting scheme where "plaintiffs have never even applied for a permit, much less been denied one."  *Southern Blasting Servs., Inc. v. Wilkes Cnty., NC*, 288 F.3d 584, 595 (4th Cir. 2002); *see Safari Club Intern. v. Jewell*, 84 F.3d 1280, 1285-86 (D.C. Cir. 2016) (noting that the general rule that a plaintiff must submit to a government policy to establish standing applies in the permitting context); *see Madsen*, 976 F.2d at 1220 (university student who failed to apply for parking permit lacked standing to challenge scheme); *see also Lehon v. City of Atlanta*, 242 U.S. 53, 55-56 (1916) (plaintiff who never applied for a license lacked standing to challenge licensing ordinance).

In analogous challenges to firearm licensing schemes, courts have accordingly held that individuals who fail to apply for a permit lack standing to challenge gun permitting laws.  In *United States v. DeCastro*, 682 F.3d 160 (2d Cir. 2012), the

Second Circuit explained that a plaintiff who "failed to apply for a gun license in New York . . . lacks standing to challenge the licensing laws of the State." *Id.* at 164. Similarly, in *Libertarian Party of Erie Cnty. v. Cuomo,* 976 F.3d 106 (2d Cir. 2020), the Second Circuit concluded that "plaintiffs who were not alleged to have applied for a New York State firearm license" did not allege "that they suffered injury-in-fact." *Id.* at 121-22. The Fifth Circuit has likewise held that a plaintiff lacked standing to challenge a federal law requiring a certification from local law enforcement officials before transferring a machine gun, where the plaintiff had not fully completed the certification process. *Westfall v. Miller*, 77 F.3d 868, 872 (5th Cir. 1996).

Although the "threshold requirement" that a plaintiff challenging a permit scheme must attempt to obtain a permit "may be excused . . . where a plaintiff makes a substantial showing that the application for the benefit would have been futile," *Safari Club*, 842 F.3d at 1285-86, here the Individual Plaintiffs do not allege that applying for the permit would be futile. ECF 1 ¶¶ 10-12; *see Decastro*, 682 F.3d at 161 (recognizing the futility exception but finding that plaintiff challenge gun permitting law had made no showing of futility).

As a result, the Individual Plaintiffs do not allege the "irreducible constitutional minimum" of "injury in fact." *Lujan*, 504 U.S. at 560-61. "Just

14

because [the Individual Plaintiffs] do[] not like the firearms regulation does not give [them] standing to complain about its legality." *Westfall*, 77 F.3d at 870.

## II. THE ASSOCIATION PLAINTIFFS LACK STANDING TO CHALLENGE NEW JERSEY'S PERMITTING LAWS

The Association Plaintiffs likewise lack standing to challenge New Jersey's permitting scheme. "[A]ssociations or organizations . . . may have standing to bring suit under two circumstances." *Donald J. Trump for President, Inc. v. Way*, 492 F. Supp. 3d 254, 364 (D.N.J. 2020). First, under so-called associational standing, "an association may assert claims on behalf of its members, but only where the record shows that the organization's *individual members themselves have standing to bring those claims*." *Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 261 (3d Cir. 2009) (quoting *Pa. Prison Soc. v. Cortes*, 508 F.3d 156, 162-63 (3d Cir. 2007)) (emphasis in original). Second, "an organization may be granted standing in its own right to seek judicial relief from *injury to itself* and to vindicate whatever rights and immunities the organization or association itself may enjoy." *Id.* (quoting *Cortes*, 508 F.3d at 162-63) (emphasis in original). Here, the Association Plaintiffs cannot satisfy either of these potential routes to Article III standing.

A.   <u>The Association Plaintiffs Lack Standing to Bring Claims on Behalf of Their Members</u>

As a preliminary matter, the Association Plaintiffs cannot establish associational standing for the same reason that the Individual Plaintiffs lack

standing.  "'[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'"  *Common Cause*, 558 F.3d at 261 (quoting *United Food & Comm'l Workers Union Local 751 v. Brown Grp., Inc.,* 517 U.S. 544, 552 (1996)).  Here, however, the Association Plaintiffs have not alleged with any particularity that their members have standing to challenge New Jersey's gun permitting law in their own right.

The Association Plaintiffs allege that the Individual Plaintiffs are members of each organization.  *See, e.g.*, ECF 1 ¶ 14 (alleging that the individual plaintiffs are members of ANJRPC).  But, as already explained, the Individual Plaintiffs lack Article III standing. *See, supra* at 12-14.  And while the Association Plaintiffs allege that they have "members who reside in New Jersey and who thus are subject to the State's restrictions on acquiring firearms," ECF 1 ¶ 53, they do not identify members who have applied for a permit or even allege the existence of such members—much less identify members who have been denied a permit or suffered harm as a result of New Jersey's scheme.  "[A]t the pleading stage, the plaintiff must clearly . . . allege facts demonstrating each element" of the standing inquiry is satisfied. *Spokeo, Inc. v. Robbins*, 136 S.Ct. 1540, 1547 (2016).  In the associational standing context,

courts have thus "required plaintiff-organizations to make specific allegations establishing that *at least one identified member had suffered or would suffer harm*." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498, (2009) (emphasis added).  Because the Association Plaintiffs have made no such allegation, they cannot satisfy the requirements of associational standing.

B.    <u>The Association Plaintiffs Lack Standing to Bring Claims on Behalf of Themselves</u>

The Association Plaintiffs also fail to allege facts establishing standing to bring claims on behalf of themselves.  An association may have Article III standing to challenge a purportedly unlawful action where its "ability to provide its primary service has been 'perceptively impaired'" and it has suffered "a consequent drain on the organization's resources."  *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 308 (3d Cir. 2014) (McKee, J., concurring in part and dissenting in part) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)).

Here, the Complaint makes the conclusory allegation that three of the Association Plaintiffs—ANJPRC, NJ2AS, and CNJFO—have "expended resources" in response to New Jersey's permitting scheme by, for example, "documenting delays in the permitting process."[3]  ECF 1 ¶ 55.  But as the Fourth

---

[3] Two of the associations—FPC and SAF—are not even based in New Jersey and offer zero detail respecting any resources they have expended, much less diverted, to address alleged infirmities in New Jersey's permitting process. ECF 1 at ¶¶17-18.

Circuit held under similar circumstances in *Lane v. Holder*, 707 F.3d 668 (4th Cir. 2012), the mere fact that a firearm advocacy organization expends resources responding to a firearm regulation "does not constitute an injury in fact." *Id.* at 675. In *Lane*, SAF—one of the same plaintiffs in this action—asserted that it had standing to challenge a federal gun law because its "resources [we]re taxed by inquiries into the operation and consequences" of the federal act. *Id.* A unanimous panel of the Fourth Circuit disagreed. "Although a diversion of resources might harm the organization by reducing the funds available for other purposes, 'it results not from any actions taken by [the defendant], but rather from the [organization's] own budgetary choices.'" *Id.* at 675 (quoting *Fair Emp't Council of Greater Washington, Inc. v. BMC Mktg. Corp.,* 1268, 1276 (D.C. Cir. 1994)). Indeed, "[t]o determine that an organization that decides to spend its money on educating members, responding to member inquiries, or undertaking litigation in response to legislation suffers a cognizable injury would be to imply standing for organizations with merely 'abstract concern[s] with a subject that could be affected by an adjudication.'" *Id.* (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 (1976). And as the Third Circuit has recognized, "'[a] mere interest in a problem, no matter how longstanding the interest . . . is not sufficient by itself.'" *Cortes*, 508 F.3d at 162 (quoting *Sierra Club v. Morton*, 405 U.S. 727, 735 (1972)).

For much the same reason, federal district courts have recently rejected similar attempts by a firearm advocacy organization to establish standing to challenge state firearm laws.  In *Maryland Shall Issue, Inc. v. Hogan*, 353 F. Supp. 3d 400 (D.Md. 2018), *aff'd Maryland Shall Issue, Inc. v. Hogan*, 963 F.3d 356 (4th Cir. 2020), the district court held that an advocacy group lacked standing to challenge a state law regulating "rapid fire trigger activators," such as so-called bump stocks.  As the court explained, while the group alleged that the state law "undermin[ed]" the group's "message and act[ed] as an obstacle to the organization's objectives and purposes," "[t]o the extent this is an 'injury' at all, it is neither concrete, nor particularized."  *Id.* at 408.  In a separate suit that challenged Maryland's state handgun licensing regime brought by the same advocacy group, a federal district court came to the identical conclusion.  Memorandum Opinion, Dkt. 102, *Maryland Shall Issue, Inc. v. Hogan*, 16-cv-3311 (D. Md. Apr. 4, 2019), *aff'd in part and rev'd in part*, *Maryland Shall Issue, Inc. v. Hogan*, 971 F.3d 199 (4th Cir. 2020).  As the court held, the advocacy group failed to establish that the state regulation hindered the group's "ability to communicate about its issues of concern or . . . promote its views."  *Id.* at 32.  Mere "disagreement with the laws enacted by the [state legislature] does not confer standing on behalf of [an] organization to challenge the law's validity."  *Id.* at 34.

Nor have the Association Plaintiffs even attempted to allege that New Jersey's permitting laws "perceptibly impair[]" their ability to carry out their mission.

*Havens*, 455 U.S. at 379.  The Complaint alleges that some of the Association Plaintiffs have "expended resources" with respect to New Jersey's laws, *see, e.g.*, ECF 1 ¶ 55, and that "burdensome restrictions on firearm acquisition" are, for example, an "affront" to ANJRPC's mission to "support[] and defend[d] the people's right to keep and bear arms," *id.* ¶ 14.  But there are no allegations in the Complaint that the Association Plaintiffs suffered any *harm* as a result of the New Jersey laws. *See Cortes,* 508 F.3d at 163 (rejecting organizations' claim to standing where there were "no allegations . . . in the unverified complaint" detailing harm to the organizations resulting from the challenged action).  By contrast, the Third Circuit has held that an organization had standing where it "stopped everything else" and "devoted all attention" to a challenged action.  *Alexander v. Riga*, 208 F.3d 419, 427 (3d Cir. 2000).

Here, moreover, the Association Plaintiffs do not allege that any efforts with respect to New Jersey's permitting laws "detract or 'differ from [their] routine activities.'"  *Tenth Street Residential Assoc. v. City of Dallas, Tex.*, 968 F.3d 492, 500 (5th Cir. 2020) (quoting *NAACP v. City of Kyle*, 626 F.3d 233, 238 (5th Cir. 2010)).  Consider, for example, Association Plaintiff NJ2AS, which states that its "mission is to defend, protect, and preserve the Second Amendment in New Jersey by exposing, documenting, and confronting anti-Second Amendment policies and legislation," and yet claims that "New Jersey's burdensome restrictions on firearm

20

acquisition have thus caused NJ2AS to expend and divert organizational resources to defend the fundamental rights of its members and supporters."  ECF ¶ 15.  If NJ2AS's "mission is to defend . . . the Second Amendment in New Jersey" then efforts spent "defend[ing] the fundamental rights of its members" in response to New Jersey's law are hardly a *diversion* from the group's routine activity.

At most, the Association Plaintiffs have alleged that New Jersey's laws are a "'setback to the organization[s'] abstract social interests,' but not an injury-in-fact." *Tenth Street*, 968 F.3d at 500 (quoting *City of Kyle*, 626 F.3d at 239).

## III.  BOB'S LITTLE SPORT SHOP LACKS STANDING TO CHALLENGE NEW JERSEY'S PERMITTING LAWS

Finally, Bob's does not possess either independent or third-party standing to challenge New Jersey's permitting laws.

### A.  Bob's Does Not Suffer An Injury In Fact As A Result of the Permitting Laws

Bob's does not suffer the constitutionally required injury in fact as a result New Jersey's permitting laws.  The Complaint suggests two theories by which Bob's could potentially assert a putative injury for standing purposes: (1) that the permitting regime results in economic harm due to lost sales; and (2) that the permitting regime imposes recordkeeping requirements on Bob's.

*First*, the Complaint alleges that "New Jersey's permitting regime harms Bob's Little Sports Shop economically" because it "imposes obstacles against potential Bob's customers."  ECF 1 ¶ 54.  But the Complaint pointedly fails to

"allege facts demonstrating" an "actual," as opposed to a "conjectural or hypothetical," economic injury that is "fairly traceable to the challenged conduct." *Spokeo*, 136 S.Ct. at 1547-48 (internal quotation marks and citation omitted). Instead, the Complaint merely asserts that "[s]ome potential customers have reserved firearms and never completed the purchase" and "Bob's has reason to believe that this lost business is due to the burdens of the permitting process." ECF 1 ¶ 54.

The mere assertion, without any factually supportive allegations, that Bob's has lost customers *due to the permitting process*—as opposed to the countless *other* reasons why a customer might reserve a firearm but not consummate the ultimate transaction—plainly fails to satisfy Bob's burden to "allege facts that affirmatively and plausibly suggest it has standing to sue." *Finkelman*, 810 F.3d at 194-95. There are, after all, any number of reasons why a customer might fail to purchase a firearm from Bob's after reserving it: the customer might find a better price at another seller, the customer might decide to spend her money on something else, the customer might experience a loss of income or unexpected expense, the customer might reevaluate whether the particular firearm reserved was the right firearm for her needs, the customer may find out she is ineligible to purchase a firearm under *federal* as opposed to *state* law, and so on. As a result, one can hardly infer, let alone plausibly, that a customer's failure to ultimately purchase a weapon is attributable

to New Jersey's permitting scheme.  Rather than provide any factual support for its attempt to tie lost customers to New Jersey's laws, the Complaint simply asserts that Bob's "has reason to believe" that these independent actors failed to purchase guns because of the permitting process.  ECF 1 ¶ 54.  Such speculative "assertion[s]" cannot satisfy a plaintiff's burden to plausibly allege an injury that is "fairly traceable" to New Jersey's permitting process. *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 411 (2013); *see Finkelman*, 810 F.3d at 196 (affirming dismissal for lack of Article III standing where plaintiff failed to allege a "causal connection between the claimed injury" and "the challenged conduct.").

The Complaint's threadbare allegations stand in contrast to the showing made by other firearms sellers that courts have determined possessed standing to challenge firearms laws.  In *Maryland Shall Issue*, for example, the Fourth Circuit held that a firearm seller had adequately supported a claim of economic injury attributable to Maryland's handgun licensing scheme where the plaintiff submitted evidence showing a "severe" drop in handgun sales temporally related to when the licensing law went into effect.  971 F.3d at 211.  Here, however, Bob's offers only its unsupported supposition that it has lost business due to the New Jersey's laws.

*Second*, the Complaint alleges that New Jersey's "permit requirements impose administrative burdens on retail dealers like Bob's, which must maintain records of firearm transactions 'for inspection by a law enforcement officer during reasonable

hours.'"  ECF 1 ¶ 54 (quoting N.J.S.A. §§ 2C:58-3(b)(3)(b), (a)(3)(b)).  It is unclear whether Bob's asserts a separate claim that these recordkeeping requirements somehow violate the Second and Fourteenth Amendments.  To the extent Bob's does assert such a claim, then—even assuming recordkeeping requirements can impose a cognizable Article III injury-in-fact—any such injury is not "likely" to be "redressed by a favorable decision" because New Jersey's state recordkeeping requirements overlap with federal-law recordkeeping duties.  *Lujan*, 504 U.S. at 566 (internal quotation marks and citation omitted); *compare, e.g.,* 27 CFR § 478.124(a), *with* N.J. Admin. Code § 13:54-3.14(a) (both requiring commercial sellers of firearms to maintain a record of every firearm sale); *see supra* at 8-9.  In other words, a decision lifting any state recordkeeping requirements would not address the supposed "injury" that Bob's suffers—presumably, the administrative burdens associated with recordkeeping.  *See Sprint Commc'ns Co. LP v. APCC Servs., Inc.*, 554 U.S. 269, 287-88 (2008) (explaining that a plaintiff's *injury* must be redressed by a favorable decision).

Importantly, moreover, because "[s]tanding is not dispensed in gross" but rather "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought," any standing to challenge recordkeeping requirements *would not* confer on Bob's standing to challenge other aspects of New Jersey's permitting laws aside from recordkeeping requirements.  *Davis v. Federal*

*Election Com'n*, 554 U.S. 724, 733-34 (2008).  And even if Bob's were to establish standing based on state recordkeeping requirements, New Jersey reserves the right to argue on the merits that, among other things, the Second Amendment's individual right does not confer on a corporate firearms seller any immunity from recordkeeping requirements.  But such arguments go to the merits of Bob's hypothetical claim (or lack thereof) as opposed to standing.

As a result, Bob's lacks Article III standing to challenge New Jersey's laws on its own behalf.

B.  Bob's Little Sports Shop Lacks Standing to Bring Claims on Behalf of its Third-Party Customers

The Supreme Court "has held that [a] plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."  *Warth v. Seldin*, 422 U.S. 490, 499 (1975).  "Without such limitations . . . the courts would be called upon to decide abstract questions of wide public significance" that "other governmental institutions may be more competent to address."  *Id.*  Nevertheless, courts have recognized a "limited . . . exception" "where it is necessary to grant a third party standing to assert the rights of another." *Kowalski v. Tesmer,* 543 U.S. 125, 129-130 (2004).  To qualify for this exception, a party "must make two additional showings."  *Id.*  First, courts ask "whether the party asserting the right has a 'close' relationship with the person who possesses the right. *Id.* at 130 (quoting *Powers v. Ohio*, 499 U.S. 400, 411 (1991)).  Second, courts

"consider[] whether there is a 'hindrance' to the possessor's ability to protect his own interests."  *Id.*[4]

As a threshold matter, because Bob's cannot establish its own, independent injury in fact, *see supra* at 21-25, it is not entitled to raise a claim on behalf of any third parties.  Only a party with its own "standing to challenge the lawfulness" of a provision" may be "entitled to assert those concomitant rights of third parties that would be 'diluted or adversely affected' should her constitutional challenge fail and the statutes remain in force."  *Craig v. Boren*, 429 U.S. 190, 195 (1976) (citation omitted); *Taliaferro v. Darby Tp. Zoning Bd.*, 458 F.3d 181, 189 (3d Cir. 2006) (explaining that to assert third-party standing parties must "suffer an injury in fact themselves.").  After all, third-party standing doctrine is not, and cannot be, an end-run around the "constitutional minimum of standing, which flows from Article III's case-or-controversy requirement," whereas third-party standing doctrine is "prudential" in nature.  *Kowalski*, 543 U.S. at 128-29; *June Med. Servs. LLC v. Russo*, 140 S. Ct. 2103, 2117 (2020) (noting that third-party standing doctrine is

---

[4] Because Bob's lacks Article III standing, this Court need not reach the separate question whether Bob's has third-party standing.  However, if the Court determines that Bob's has alleged Article III standing, which goes to subject-matter jurisdiction, and proceeds to address the third-party standing, which does not, Defendants ask the Court to construe this motion as brought under both Rules 12(b)(1) and 12(b)(6) for the limited purpose of addressing third-party standing.

"prudential" and "does not involve the Constitution's case of controversy doctrine.").

In any event, Bob's cannot make either of the showings required to establish entitlement to assert third-party standing.   A firearms dealer, like most retail merchants, lacks any significant relationship with its customers—the individuals who possess any Second Amendment right—let alone a "close" relationship, and the Complaint does not allege any facts to suggest otherwise. *Kowalski*, 543 U.S. at 129-130.   Here, moreover, there is no obvious obstacle to an individual who has applied for a permit bringing a challenge to the constitutionality of New Jersey's permitting laws, meaning the party who possesses the putative Second Amendment claim is well positioned to "protect his own interests" without the need for a firearms dealer to press the claim for him.  *Id.*

To be sure, courts have relaxed these requirements where, as here, a vendor challenges a rule that restricts "their operations" and "the rights of third parties who seek access to their market."  *Craig v. Boren*, 429 U.S. 190, 195 (1976); *Maryland Shall Issue*, 971 F.3d at 215-16 (holding that firearm seller had third-party standing to represent potential customers).[5]  But the rule that a seller with independent Article

---

[5] Because the Fourth Circuit in *Maryland Shall Issue* held that the firearm seller there had established its own Article III injury in fact, the court proceeded to ask whether the firearm seller could also represent the interest of third-party customers.  971 F.3d at 214.  Here, however, for the reasons explained, Bob's cannot establish its own independent Article III injury.  *Maryland Shall Issue* is, thus, distinguishable.

III standing may possess third-party standing to represent the interests of its customers is not absolute.  Rather, to be entitled to raise claims on behalf of third parties, courts ask whether a seller is "the party upon whom the challenged statute imposes 'legal duties and disabilities'" such that the seller is "'the obvious claimant'" and "'the least awkward challenger.'"  *June*, 140 S. Ct. at 2119 (quoting *Craig*, 429 U.S. at 196-96).  Thus, in *June*, the Supreme Court held that abortion providers could assert third-party standing on behalf of patients to challenge an admitting-privileges law because the providers, "as the parties who must actually go through the process of applying for and maintaining admitting privileges . . . are far better positioned that their patients to address the burdens of compliance."  140 S. Ct. at 2119.  Here, however, the "legal duties" imposed by New Jersey's permitting law fall overwhelmingly on the potential *buyer* of a firearm, who must obtain an FID and/or HPP prior to acquiring a firearm.  *Id.*  As a result, it is the individuals who purchase or own firearms (or wish to do so) that are the natural party to raise any Second Amendment challenge to New Jersey's permitting laws.

What's more, courts also ask whether a party seeking to assert third-party standing can "convince the court that it would be as effective a proponent of its customers' rights as they would be."  *Hong Kong Supermarket v. Kizer*, 830 F.2d 1078, 1081 (9th Cir. 1987).  Thus, in *Hong Kong*, the Ninth Circuit rejected a claim to third-party standing where a supermarket sought to assert standing on behalf of

its customers.  As the court reasoned, the supermarket's objection to the challenged government regulation could be addressed through remedies that fell short of addressing the claims of its third-party customers, casting "considerable doubt" on the supermarket's "competence or incentive 'to frame the issues and present them with the necessary adversarial zeal.'"  *Id.* at 1082 (quoting *Secretary of State v. Joseph H. Munson Co.,* 467 U.S. 947, 956 (1984)).  Here, the same is true: while Bob's may be satisfied by a change in New Jersey's regime that would lift *firearms sellers'* responsibility to prevent sales to those without necessary permits while leaving restrictions on individuals' rights to own firearms in place, *individuals* in New Jersey who might challenge New Jersey's permitting laws may seek the removal of permitting requirements altogether.  As a result, any challenge to New Jersey's permitting laws concerning a person's rights under the Second Amendment should be litigated by a person who will zealously advocate for his own interests. Bob's is not entitled to third-party standing.

## **CONCLUSION**

For the foregoing reasons, the Complaint should be dismissed.

Respectfully Submitted,

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY

By:   <u>/s/ Stephanie M. Mersch</u>
Stephanie M. Mersch
Deputy Attorney General

Dated:  June 4, 2021