## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SANDRA KENDRICK, *et al.*, | ) | |
| | ) | |
| *Plaintiffs*, | ) | Hon. Robert B. Kugler, U.S.D.J. |
| | ) | Hon. Ann Marie Donio, U.S.M.J. |
| v. | ) | Civil Action No. 21-cv-6231 |
| | ) | |
| GURBIR S. GREWAL, in his official | ) | **CIVIL ACTION** |
| capacity as Attorney General of New | ) | |
| Jersey, *et al.*, | ) | **(ELECTRONICALLY FILED)** |
| | ) | |
| *Defendants*. | ) | |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS

Daniel L. Schmutter
HARTMAN & WINNICKI, P.C.
74 Passaic Street
Ridgewood, New Jersey 07450
(201) 967-8040
(201) 967-0590 (fax)
dschmutter@hartmanwinnicki.com

*Attorney for Plaintiff Association of
New Jersey Rifle & Pistol Clubs, Inc.*

David D. Jensen
DAVID JENSEN PLLC
33 Henry Street, Suite 420
Beacon, New York 12508
(212) 380-6615
(914) 591-1318 (fax)
david@djensenpllc.com

David H. Thompson*
Peter A. Patterson*
Joseph O. Masterman*
COOPER & KIRK, PLLC
1523 New Hampshire Ave., N.W.
Washington, D.C. 20036
(202) 220-9600
(202) 220-9601 (fax)
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
jmasterman@cooperkirk.com

*Attorneys for Plaintiffs*

*Appearing *pro hac vice*

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................ i

INTRODUCTION ........................................................................................1

BACKGROUND ........................................................................................2

ARGUMENT ..........................................................................................5

I.    All Plaintiffs Have Standing to Challenge the Permitting Requirements. ......5

    A.    The Individual Plaintiffs Have Standing. ...........................................5

    B.    The Association Plaintiffs Have Standing. ......................................12

    C.    Bob's Little Sport Shop Has Standing...............................................17

II.   The Police Chiefs Are Proper Defendants. ..................................................21

CONCLUSION ........................................................................................22

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page**

*A.N.S.W.E.R. Coalition v. Salazar*, 915 F. Supp. 2d 93 (D.D.C. 2013)..............6, 11

*Allen v. Wright*, 468 U.S. 737 (1984) ...................................................................10

*Bloedorn v. Grube*, 631 F.3d 1218 (11th Cir. 2011)...........................................6, 7

*Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247 (3d Cir. 2014) ...........................12

*Connecticut Citizens Defense League, Inc. v. Lamont*,
   465 F. Supp. 3d 56 (D. Conn. 2020) ...............................................................13

*Constitution Party of Pa. v. Aichele*, 757 F.3d 347 (3d Cir. 2014) ...................5, 18

*Cottrell v. Alcon Lab'ys*, 874 F.3d 154 (3d Cir. 2017) .........................................17

*Craig v. Boren*, 429 U.S. 190 (1976).........................................................17, 18, 19

*Diamond v. Charles*, 476 U.S. 54 (1986) .............................................................22

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ...........................................3, 6

*Eisenstadt v. Baird*, 405 U.S. 438 (1972) .............................................................17

*Epona, LLC v. Cnty. of Ventura*, 876 F.3d 1214 (9th Cir. 2017) .........................20

*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011)..............................6, 16, 20

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) ..............................5, 18

*Harrison v. Spencer*, 449 F. Supp. 3d 594 (E.D. Va. 2020)..................................15

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982)...................................12, 14

*Hosp. Council of W. Pa. v. City of Pittsburgh*, 949 F.2d 83 (3d Cir. 1991) ..........16

*Jackson-Bey v. Hanslmaier*, 115 F.3d 1091 (2d Cir. 1997) ...................................8

*June Med. Servs. L.L.C. v. Russo*, 140 S. Ct. 2103 (2020)......................................1

*Lane v. Holder*, 703 F.3d 668 (4th Cir. 2012) ......................................................15

*Lehon v. City of Atlanta*, 242 U.S. 53 (1916) .......................................................10

*Libertarian Party v. Cuomo*, 970 F.3d 106 (2d Cir. 2020) ....................................9

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
   140 S. Ct. 2367 (2020)...............................................................................2, 5

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).....................................5, 6, 11

*Madsen v. Boise State*, 976 F.2d 1219 (9th Cir. 1992) .......................................8, 9

*Massachusetts v. EPA*, 549 U.S. 497 (2007) ..........................................................19

*McDonald v. City of Chicago*, 561 U.S. 742 (2010)..................................................1

*Md. Shall Issue v. Hogan*, 971 F.3d 199 (4th Cir. 2020) ...........................15, 18, 20

*Md. Shall Issue v. Hogan*, 353 F. Supp. 3d 400 (D. Md. 2018) .............................15

*Moose Lodge No. 107 v. Irvis*, 407 U.S. 163 (1972).............................................10

*N.J. Physicians, Inc. v. President of United States*, 653 F.3d 234 (3d Cir. 2011) ....5

*Pa. Psychiatric Soc. v. Green Spring Health Servs., Inc.*,
    280 F.3d 278 (3d Cir. 2002).............................................................................16

*Parker v. District of Columbia*, 478 F.3d 370 (D.C. Cir. 2007).............................6

*PETA v. U.S. Dep't of Agriculture*, 797 F.3d 1087 (D.C. Cir. 2015) ................1, 13

*Planned Parenthood Ass'n v. Kempiners*, 700 F.2d 1115 (7th Cir. 1983) .............10

*Presbytery of New Jersey of Orthodox Presbyterian Church v. Florio*,
    40 F.3d 1454 (3d Cir. 1994)...............................................................................7

*Reliable Consultants, Inc. v. Earle*, 517 F.3d 738 (5th Cir. 2008) ........................20

*Safari Club Int'l v. Jewell*, 842 F.3d 1280 (D.C. Cir. 2016) .................................10

*Southern Blasting Servs., Inc. v. Wilkes Cnty.*, 288 F.3d 584 (4th Cir. 2002) ........10

*Steffel v. Thompson*, 415 U.S. 452 (1974) ...............................................................7

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) ...........................1, 7, 21

*United States v. Decastro*, 682 F.3d 160 (2d Cir. 2012).........................................9

*Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383 (1988) ......................................21

*Warth v. Seldin*, 422 U.S. 490 (1975).............................................................11, 12

*Westfall v. Miller*, 77 F.3d 868 (5th Cir. 1996).................................................10, 11

**Statutes and Codes**

18 U.S.C. § 922(a)(3).................................................................................................9

N.J.S.A.

    2C:39-10(a)(1) .....................................................................................................4

    2C:43-3(b)(2)........................................................................................................4

    2C:43-6(a)(4) ........................................................................................................4

    2C:58-3(a) .............................................................................................................2

    2C:58-3(a)(3)(b) .................................................................................................18

2C:58-3(a)(3)(c) ...................................................................................3

2C:58-3(b) .............................................................................................2

2C:58-3(b)(3)(b) ................................................................................18

2C:58-3(b)(3)(c) ..................................................................................3

2C:58-3(e) .............................................................................................3

2C:58-3(f) .............................................................................................3

N.J.A.C.

13:54-1.4(a) ..........................................................................................3

13:54-1.4(d) ..........................................................................................3

13:54-1.4(g) ..........................................................................................3

13:54-1.8(a)–(b) ................................................................................18

## **INTRODUCTION**

The Second Amendment may not "be singled out for special—and specially unfavorable—treatment." *McDonald v. City of Chicago*, 561 U.S. 742, 778–79 (2010). New Jersey, however, has done just that. The State has constructed a complex, costly, and time-consuming permitting process that every law-abiding citizen must complete before acquiring a firearm. And now the State argues that Plaintiffs do not even have standing to challenge this regime.

This argument would be rejected out of hand in any other context. If Sandra Kendrick, Carol Kinkade, and Nancy Merritt (the "Individual Plaintiffs") wished to display ads against firearm ownership, rather than purchase firearms, they would unquestionably have standing to challenge a state law inhibiting them from doing so. *See, e.g.*, *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161–64 (2014). If ANJRPC, NJ2AS, CNJFO, FPC, and SAF (the "Association Plaintiffs") were dedicated to defending animal rights, rather than Second Amendment rights, they too would have standing to sue on their own behalf. *See PETA v. U.S. Dep't of Agriculture*, 797 F.3d 1087, 1089 (D.C. Cir. 2015). And if Bob's Little Sport Shop provided abortion services, rather than firearms, it would have standing to sue on behalf of its clientele. *See, e.g.*, *June Med. Servs. L.L.C. v. Russo*, 140 S. Ct. 2103, 2119 (2020) (plurality op.).

Contrary to Defendants' assertions, the same is true here. The Individual Plaintiffs need not be denied firearm permits before challenging the constitutionality of the permitting process. They contend that the *existence* of that process violates their Second Amendment rights. They thus have standing and a live controversy with all named Defendants. The Association Plaintiffs in turn have standing to sue on behalf of themselves, due to the resources they have diverted in response to the permitting regime, and/or on behalf of their members (including the Individual Plaintiffs) currently suffering a constitutional injury. And Bob's has standing to sue on behalf of its clients due to the burdens that the regime imposes on its business with them.

This Court has jurisdiction over all Plaintiffs' claims as long as one Plaintiff has standing to assert them. *See, e.g.*, *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2379 n.6 (2020). All Plaintiffs do. Accordingly, Defendants' Motions to Dismiss should be denied.

## **BACKGROUND**

With limited exceptions, any law-abiding citizen who wishes to acquire a long gun in New Jersey must first obtain a Firearm Purchaser Identification (FID) card. *See* N.J.S.A. 2C:58-3(b). To acquire a handgun, he must first obtain a Permit to Purchase a Handgun (HPP). *See* N.J.S.A. 2C:58-3(a). These permitting requirements are well outside any "historical tradition" of firearm regulation, seriously burden

citizens' Second Amendment rights, and make New Jersey less safe by placing barriers in the way of law-abiding citizens who wish to acquire firearms—barriers that criminals will ignore. *District of Columbia v. Heller*, 554 U.S. 570, 627 (2008); *see* Compl., Doc. 1, ¶¶ 4–5, 59–63 (March 22, 2021).

To apply for either an FID card or an HPP, an applicant must complete a S.T.S. 033 form, divulging a wealth of personal information (including name, date and place of birth, address, Social Security number, and "distinctive physical characteristics"); complete an S.P. 66 form, consenting to a search of his mental health records; and submit two sets of fingerprints, requiring him to schedule and attend an appointment with the State's fingerprinting vendor, IdentoGo. *See* N.J.A.C. 13:54-1.4(a), (d); Ex. 1 to Compl., Doc. 1-1 (March 22, 2021); Ex. 2 to Compl., Doc. 1-2 (March 22, 2021). IdentoGo's current fingerprinting fee is over $50, Compl. ¶ 36, and even if the applicant has been fingerprinted before for firearm purposes, officials have discretion to require new ones, *see* N.J.A.C. 13:54-1.4(g); N.J.S.A. 2C:58-3(e). On top of that, the State charges a fee—$5 for an FID card and $2 for an HPP—for each application. *See* N.J.S.A. 2C:58-3(a)(3)(c), (b)(3)(c). If applications are processed as the law requires, applicants may still wait up to 30 days for approval, *see id*. 2C:58-3(f), and in reality approval often takes far longer, *see* Ex. 3 to Compl., Doc. 1-3, at 6–7 (March 22, 2021) (recording delays, sometimes as long as 18 months, across approximately 100 jurisdictions).

Violations of this permitting regime are criminal offenses with stiff penalties. Purchasing a firearm without a valid FID card or HPP is a crime in the fourth degree, N.J.S.A. 2C:39-10(a)(1), which carries a maximum prison sentence of eighteen months, N.J.S.A. 2C:43-6(a)(4), and a fine of up to $10,000, N.J.S.A. 2C:43-3(b)(2).

Plaintiffs are three New Jersey residents who wish to exercise their Second Amendment rights to acquire firearms and who would do so forthwith but for the permit requirement; five nonprofit organizations dedicated to protecting the Second Amendment rights of their members, including the Individual Plaintiffs; and a firearm retailer that has lost business because of the burdens this regime places on its customers. Defendants are State and local officials responsible for administering and enforcing the FID and HPP requirements in the State and in the jurisdictions where Plaintiffs reside. Plaintiffs seek a declaration that these requirements are unconstitutional on their face and an injunction against their enforcement.

Defendants Cundey and Polillo (the "Police Chiefs") move to dismiss under Rule 12(b)(6). Plaintiffs fail to state a claim against them, they say, because "no actions or inactions on the[ir] part . . . caused harm to Plaintiffs." Br. in Supp. of Defs. Cundey & Polillo Mot. To Dismiss, Doc. 33-1, at 3 (June 3, 2021) ("Police Chiefs' Br."). Defendants Grewal and Callahan (the "State Defendants") move to dismiss under Rule 12(b)(1) for similar reasons, arguing that Plaintiffs lack standing

and that this Court thus lacks subject-matter jurisdiction. Neither Motion disputes the merits of Plaintiffs' constitutional claims.

## ARGUMENT

The same standard of review applies to both Motions. The Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks omitted); *see also, e.g.*, *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357–58 (3d Cir. 2014).

## I.   All Plaintiffs Have Standing to Challenge the Permitting Requirements.

Standing requires "an injury in fact" that is "fairly traceable" to the named defendants and that is likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up). The Court has jurisdiction over all Plaintiffs' claims as long as one Plaintiff has standing to assert them. *See Little Sisters of the Poor*, 140 S. Ct. at 2379 n.6; *N.J. Physicians, Inc. v. President of United States*, 653 F.3d 234, 239 (3d Cir. 2011). And here, all Plaintiffs have standing to challenge New Jersey's unconstitutional permitting regime.

### A.   The Individual Plaintiffs Have Standing.

The existence of New Jersey's permitting regime interferes with the Individual Plaintiffs' Second Amendment rights to acquire firearms for self-defense

and other lawful purposes. If not for this regime, all Individual Plaintiffs would exercise these rights "forthwith." Compl. ¶ 53. Thus, their fundamental constitutional rights have been deprived in a "concrete," "particularized," and "actual" way—a quintessential injury in fact. *Lujan*, 504 U.S. at 560.

The Individual Plaintiffs need not subject themselves to the permitting process in order to challenge its constitutionality. This principle is well-established in the First Amendment context, which courts frequently consult in Second Amendment cases. *See, e.g.*, *Parker v. District of Columbia*, 478 F.3d 370, 399 (D.C. Cir. 2007), *aff'd sub nom. Heller*, 554 U.S. 570; *Ezell v. City of Chicago*, 651 F.3d 684, 699 (7th Cir. 2011). In *A.N.S.W.E.R. Coalition v. Salazar*, for example, an advocacy group that wished "to engage in political dissent during the Presidential Inaugural Parade" challenged a permitting regime that restricted the non-governmental use of federal land along the parade route. 915 F. Supp. 2d 93, 96 (D.D.C. 2013), *aff'd sub nom. A.N.S.W.E.R. Coal. v. Basham*, 845 F.3d 1199 (D.C. Cir. 2017). Because "[a] permit denial . . . is not a prerequisite to establish standing," the court ruled that "the fact that [plaintiff] did not apply for, and thus was not denied, a permit for sidewalk space along Pennsylvania Avenue does not bar [it] from establishing standing with respect to its lack of access to those areas." *Id.* at 103. Similarly, in *Bloedorn v. Grube*, an itinerant preacher had standing to challenge the constitutionality of a state university's permitting requirements for non-university speakers, again despite the

fact that he "did not seek a permit from the University." 631 F.3d 1218, 1227 (11th Cir. 2011). Simply put, if a plaintiff alleges a constitutional entitlement to engage in an activity without a permit, the existence of a permitting regime is an injury in fact. The plaintiff need not exacerbate his own injury by seeking a permit before seeking relief from the regime.

A plaintiff also need not "expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). For it is similarly well-established that a plaintiff has standing where he has "alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List*, 573 U.S. at 160 (internal quotation marks omitted). The Third Circuit has held, for example, that a church pastor had standing to challenge a New Jersey antidiscrimination law because he alleged an intent to speak against homosexuality, which the statute arguably prohibited, and thus "face[d] a real threat of prosecution." *Presbytery of New Jersey of Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1465–68, 1470 n.14 (3d Cir. 1994). Although the statute had not yet been enforced against him, and the State had not explicitly threatened to do so, the State's refusal to "disavow" prosecution was enough. *Id.* at 1461.

So too here. The Individual Plaintiffs have alleged an intent to acquire firearms without an FID card or an HPP, which the Second Amendment entitles them to do but which New Jersey law prohibits. *See* Compl. ¶ 53. The only reason they have refrained from doing so is New Jersey's law making that course of conduct illegal and the attendant threat of criminal penalties. *See id*. If they did so, Defendants would have authority to enforce the law's penalties against them, and neither the State Defendants nor the Police Chiefs disavow that they would. The Individual Plaintiffs thus have pre-enforcement standing to challenge the FID and HPP requirements. Article III does not force them to choose between sacrificing their constitutional rights or risking arrest and prosecution.

Defendants dispute these principles, arguing that, "[a]s a general matter, . . . a plaintiff must submit to the challenged policy" to establish standing. Br. in Supp. of Defs. Grewal & Callahan Mot. To Dismiss, Doc. 34-1, at 12 (June 4, 2021) ("State Br."); *accord* Police Chiefs' Br. at 11. But Defendants' favored cases hold merely that certain policy challenges are not cognizable, not that plaintiffs may never challenge a policy before subjecting themselves to it.

In some of these cases, the plaintiffs did not even challenge the lawfulness of the policy itself, only of its application to them. *See Jackson-Bey v. Hanslmaier*, 115 F.3d 1091, 1096 (2d Cir. 1997) ("Jackson–Bey challenges neither the efficacy nor the constitutionality of the registration requirement[.]"); *accord Madsen v. Boise*

*State*, 976 F.2d 1219, 1221 (9th Cir. 1992) ("Madsen comes before us arguing that he suffered discrimination on the basis of handicap because he was denied a no-fee handicap parking permit.").

The criminal defendant in *United States v. Decastro* did not challenge the lawfulness of a state permitting scheme at all. He challenged a federal law, 18 U.S.C. § 922(a)(3), requiring firearm purchases to be made in-state; New York's permitting scheme was relevant only insofar as he argued that, as applied to him, it effectively required him to purchase a firearm outside his home state. 682 F.3d 160, 163–64 (2d Cir. 2012). The court did not permit him to challenge § 922(a)(3) on that ground when he had neither applied for a permit nor shown that doing so would be futile. *See id*. Here, that showing is irrelevant. Plaintiffs challenge the permit requirement itself and claim an injury from the need to apply. That also separates this case from *Libertarian Party v. Cuomo*, which relied on *Decastro* (which itself relied on several cases distinguishable for the reasons herein, *see* 682 F.3d at 164), and where the plaintiffs challenged specific conditions on permits that some plaintiffs had not applied for. 970 F.3d 106, 121–22, 127–28 (2d Cir. 2020).

In other cases, a cognizable injury could have arisen *only* if the plaintiffs had subjected themselves to the challenged policies. The plaintiffs in *Allen* and *Moose Lodge*, for example, were not personally injured by discriminatory admission policies at private schools and clubs that they had not applied to and apparently had

no intention of applying to, and under basic Article III principles they could not base standing on "generalized grievances" against the policies. *Allen v. Wright*, 468 U.S. 737, 746, 751 (1984); *see also Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 166–67 (1972) ("Appellee has standing to seek redress for injuries done to him, but may not seek redress for injuries done to others. . . . [I]n this case appellee was not injured by Moose Lodge's membership policy since he never sought to become a member."); *Planned Parenthood Ass'n v. Kempiners*, 700 F.2d 1115, 1136 (7th Cir. 1983) (op. of Posner, J.) ("[T]here was no evidence that [plaintiff] *wanted* to be a Moose; not everyone does."); *accord Lehon v. City of Atlanta*, 242 U.S. 53, 55 (1916) ("[Plaintiff] had not asserted a right, and, in the [a]bsence of assertion, could not have it judicially passed on."). The same went for plaintiffs who challenged permitting requirements on procedural grounds without first following the procedures. *See Westfall v. Miller*, 77 F.3d 868, 870–71 (5th Cir. 1996); *Southern Blasting Servs., Inc. v. Wilkes Cnty.*, 288 F.3d 584, 595 (4th Cir. 2002).

In short, none of Defendants' cases involves an injury stemming from the existence of a permitting regime. And to the extent any particularized injuries were alleged, they could have been fully resolved if the plaintiffs had received a permit. *See Safari Club Int'l v. Jewell*, 842 F.3d 1280, 1286 (D.C. Cir. 2016) ("[Plaintiff] claims an . . . injury" from "the inability to obtain a permit"); *Westfall*, 77 F.3d at 872 ("Westfall will not have an injury of which to complain if [an official] provides

the requested certification."). That is not the case here. Plaintiffs contend that they have a constitutional right to obtain firearms without first obtaining a permit, which must be assumed correct when assessing standing. *See Warth v. Seldin*, 422 U.S. 490, 501–02 (1975). Even if they obtained a permit, the injury to that right would go unaddressed. The need for a permit is the source of the harm. This case is therefore controlled not by *Allen* or *Moose Lodge*, but by the rule that "[a] permit denial . . . is not a prerequisite to establish standing" when plaintiffs challenge the constitutionality of a permit requirement itself. *A.N.S.W.E.R. Coal.*, 915 F. Supp. 2d at 103.

The Individual Plaintiffs' constitutional injury is thus an "injury in fact."[1] *Lujan*, 504 U.S. at 560. The other two standing requirements—traceability and redressability—necessarily follow, as Defendants do not contest. Defendants administer and enforce the permitting regime that is causing the Individual Plaintiffs' injury. The Court would fully redress this injury by declaring the FID and HPP requirements unconstitutional and by enjoining Defendants from enforcing

---

[1] Ruling otherwise would invite gamesmanship. Under Defendants' theory, a plaintiff must apply for a permit before challenging a permit requirement; but after he applies, officials could simply grant the permit and argue that the grant mooted any injunctive claim. States could then put as many permitting barriers as they like in front of the constitutional right to obtain firearms, as long as the permits are eventually (or strategically) granted. Where a constitutional injury stems from the permit requirement itself, this logic cannot hold.

them, the relief Plaintiffs seek. Accordingly, the Individual Plaintiffs have standing. In any other context, this proposition would be beyond dispute.

**B.** **The Association Plaintiffs Have Standing.**

All of the Association Plaintiffs have "associational" standing to challenge the permitting regime on behalf of their members. Three of the Association Plaintiffs—ANJRPC, NJ2AS, and CNJFO—also have direct "organizational" standing to challenge the regime in their own rights.

*Organizational standing.* "There is no question that an association may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy." *Warth*, 422 U.S. at 511. An association suffers an injury to itself when "a defendant's actions 'perceptibly impair' the organization's ability to provide services." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 285 (3d Cir. 2014) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)). In *Havens*, a nonprofit organization whose mission was to promote equal opportunity in housing sued a rental-management company for steering applicants away from buildings based on race. 455 U.S. at 366–68. Because the organization's mission had been "frustrated," and because the organization "had to devote significant resources to identify and counteract" the challenged practices, it had standing to sue on its own behalf. *Id.* at 379. Likewise, the D.C. Circuit held that PETA had standing to sue the Department of Agriculture

12

over the Department's failure to adopt regulations implementing the Animal Welfare Act. *See PETA v. Dep't of Agriculture*, 797 F.3d 1087, 1089 (D.C. Cir. 2015). This failure impaired two of PETA's alleged missions—to "bring AWA violations to the attention of the [government] . . . and continue to educate the public"—and PETA expended resources to compensate. *Id.* at 1094–95.

The decision in *Connecticut Citizens Defense League, Inc. v. Lamont*, 465 F. Supp. 3d 56 (D. Conn. 2020), succinctly applies these principles to the Second Amendment context. There, a Second Amendment advocacy organization sought to enjoin an executive order allowing police departments to refuse to collect fingerprints from new applicants for handgun permits, functionally denying new applicants the right to acquire a handgun. The organization alleged that it "has, and continues to expend and divert its resources" in response to the order, which "detracted from [the organization's] usual activities to engage in legislative and grassroots advocacy, education, and research on behalf of Second Amendment rights." *Id.* at 68 (internal brackets omitted). This forced diversion of resources once again sufficed for organizational standing. *Id.*

Plaintiffs ANJRPC, NJ2AS, and CNJFO all share a mission to support the exercise of Second Amendment rights in New Jersey. Although Defendants mischaracterize this mission as merely opposing firearm legislation, *see* State Br. at 20–21, in reality the Association Plaintiffs promote a broad range of Second

Amendment interests—which include combatting unconstitutional firearm restrictions, but which also include promoting firearm sports, firearm safety, and firearm-related education. *See* Compl. ¶¶ 14–18. This mission is "frustrated" by New Jersey's permitting laws, since burdens on citizens' ability to own firearms plainly impedes the Association Plaintiffs' ability to promote lawful firearm use. *Havens*, 455 U.S. at 379.

These three Association Plaintiffs have "devote[d] significant resources to identify and counteract" these burdens. *Havens*, 455 U.S. at 379. They have "document[ed] delays in the permitting process, offer[ed] guidance to members and other citizens subject to such delays, and petition[ed] the Governor to reform the process." Compl. ¶ 55; *see also id.* ¶ 52 n.7 (citing Michael Hill, *Second Amendment Society Claims Police Departments Delaying and Denying Handgun Permits*, NJ SPOTLIGHT NEWS (Dec. 2, 2015), https://bit.ly/30DCoqK (describing NJ2AS's investigations into permit delays); ANJRPC, *ANJRPC Launches Phase 2 of Statewide Crackdown on Permitting Abuses!*, https://bit.ly/3tFLRKH (describing ANJRPC's Permitting StrikeForce program, an "initiative to end firearm permitting abuses throughout the Garden State")). This is far more than "mere interest in a problem." State Br. at 18 (internal quotation marks omitted). These expenditures are compelled by the permitting regime, are directed at alleviating the harm that this regime does to Plaintiffs' interests, and consume resources that Plaintiffs could have

14

spent elsewhere. These Plaintiffs have therefore suffered the same cognizable injury as the nonprofits in *Havens*, *PETA*, and *Connecticut Citizens Defense League*.

Defendants rely instead on a line of Fourth Circuit cases for the proposition that "expend[ing] resources responding to a firearm regulation does not constitute an injury in fact." State Br. at 18 (internal quotation marks omitted). These precedents do not control here and in any event do not undermine these Plaintiffs' standing. In *Maryland Shall Issue v. Hogan*, 971 F.3d 199 (4th Cir. 2020), the Fourth Circuit explicitly withheld judgment on organizational standing after holding that plaintiffs had standing to assert their Second Amendment claims on other grounds. *See id*. at 210. The district court's opinion in the other *Maryland Shall Issue* case stands, at best, for the proposition that advocacy expenditures related to a challenged law do not constitute an injury. *See Md. Shall Issue v. Hogan*, 353 F. Supp. 3d 400, 408 (D. Md. 2018). Such expenditures are distinct from Plaintiffs' expenditures to counteract direct harm to their missions. And to the extent Defendants attempt to read *Lane v. Holder*, 703 F.3d 668 (4th Cir. 2012), to bar standing for gun-rights organizations based on these latter expenditures, such a reading conflicts with *Lane*, with the Supreme Court's holding in *Havens* (which *Lane* applies), and with several later decisions from the same circuit recognizing organizational standing on this basis. *See, e.g.*, *Harrison v. Spencer*, 449 F. Supp. 3d 594, 603 (E.D. Va. 2020) (collecting cases).

In sum, ANJRPC, NJ2AS, and CNJFO are directly injured by New Jersey's permitting requirements and thus possess organizational standing.

*Associational standing*. Even if those Plaintiffs did not have organizational standing, all Association Plaintiffs have associational standing. An association may assert claims on behalf of its members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Pa. Psychiatric Soc. v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 283 (3d Cir. 2002) (internal quotation marks omitted).

As explained, the Individual Plaintiffs—who are members of the Association Plaintiffs—have standing in their own right, as do the many other members injured in the same way. Defendants do not contest the second or third elements, which are easily satisfied. Protecting Second Amendment rights is not just germane to the Association Plaintiffs' purpose; it largely is their purpose. *See* Compl. ¶¶ 14–18. And "requests by an association for declaratory and injunctive relief do not require participation by individual association members." *Hosp. Council of W. Pa. v. City of Pittsburgh*, 949 F.2d 83, 89 (3d Cir. 1991). Hence why courts routinely recognize the associational standing of gun-rights organizations to protect their members' interests. *See, e.g.*, *Ezell*, 651 F.3d at 696.

16

The Association Plaintiffs have standing—whether on behalf of themselves, themselves and their members, or just their members—to challenge the FID and HPP requirements.

### C.   **Bob's Little Sport Shop Has Standing.**

Bob's has third-party standing to vindicate the Second Amendment rights of its customers. When a vendor is injured by a law that also burdens the asserted constitutional rights of its customers or prospective customers, the vendor may sue on behalf of those customers. In *Craig v. Boren*, for example, the Supreme Court held that a beer vendor had third-party standing to challenge gender-based restrictions on purchasing "nonintoxicating" beer. 429 U.S. 190, 192, 196–97 (1976); *see also, e.g.*, *Eisenstadt v. Baird*, 405 U.S. 438, 446 (1972).

Bob's alleges two injuries that anchor its third-party standing. First, the permitting regime has caused Bob's to lose firearm sales. Compl. ¶ 54. "[F]inancial harm is a 'classic' and 'paradigmatic form' of injury in fact." *Cottrell v. Alcon Lab'ys*, 874 F.3d 154, 163 (3d Cir. 2017) (brackets omitted). Defendants do not dispute that lost business is a financial harm. *See, e.g.*, *Craig*, 429 U.S. at 194. Instead, they argue that Bob's has not sufficiently alleged that the permitting regime has caused it to lose sales. *See* State Br. at 21–23. At this early stage, however, Plaintiffs need not *prove* the causal connection. The allegation that "potential customers have reserved firearms and never completed the purchase . . . due to the

17

burdens of the permitting process," Compl. ¶ 54, must be credited and considered "in the light most favorable to the plaintiff," *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). Coupled with the existing evidence of the permitting process's several costs, *see supra* Part I.A, that allegation is at the very least "plausible," which is all it needs to be. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). And given that the permit requirements restrain the market for Bob's products, it is nearly certain. *See Craig*, 429 U.S. at 194 (observing that a vendor "incur[s] a direct economic injury through the constriction of [its] buyers' market" and that "such injuries establish the threshold requirements" for standing (cleaned up)); *see also Md. Shall Issue*, 971 F.3d at 214 ("Atlantic Guns' asserted injury is redressable because the injunctive relief sought here would allow it to sell handguns to a broader range of potential customers, thereby increasing its opportunity to make sales and generate revenue.").

Second, the permitting regime saddles Bob's with administrative costs, including the cost of "maintain[ing] a record of transactions conducted pursuant to" the permitting laws, "which shall be maintained . . . for inspection by a law enforcement officer during reasonable hours." N.J.S.A. 2C:58-3(a)(3)(b), (b)(3)(b); *see also* N.J.A.C. 13:54-1.8(a)–(b) (FID and HPP certification requirements). The State Defendants note that federal law imposes similar requirements, but complying with the permit requirement, recording compliance with that requirement, and

keeping those records for inspection by New Jersey officers are burdens imposed by New Jersey law. And a plaintiff "need not show that a favorable decision will relieve his *every* injury." *Massachusetts v. EPA*, 549 U.S. 497 (2007) (internal quotation marks omitted). He has standing if "he shows that a favorable decision will relieve a discrete injury to himself." *Id*. Bob's suffers harms that are uniquely traceable to New Jersey law, as administered and enforced by Defendants, and that the Court can remedy by enjoining enforcement of the permitting requirements, the remedy Bob's seeks. Bob's has standing.

Defendants' remaining, purportedly prudential objections to its *third-party* standing run against uniform practice. Defendants argue that Bob's "lacks any significant relationship with its customers," that would-be gun owners could bring their own claims, and that Bob's will not pursue its customers' claims "with the necessary adversarial zeal." State Br. at 27–29. These arguments ignore *Craig*, where the Supreme Court noted that "vendors and those in like positions have been *uniformly* permitted to resist efforts at restricting their operations by acting as advocates of the rights of third parties who seek access to their market or function." 429 U.S. at 456 (emphasis added).

Indeed, circuit courts have consistently rejected these arguments in analogous cases. The Ninth Circuit has allowed wedding planners to challenge permitting requirements on behalf of couples despite arguments that these customers could

assert their own claims. *See, e.g.*, *Epona, LLC v. Cnty. of Ventura*, 876 F.3d 1214, 1219–20 (9th Cir. 2017). The Seventh Circuit has allowed "a supplier of firing-range facilities" to vicariously vindicate the Second Amendment rights of its customers. *Ezell*, 651 F.3d at 696. The Fifth Circuit has allowed adult novelty retailers to sue on behalf of customers wishing to buy "sexual devices," noting that "Supreme Court cases hold that businesses can assert the rights of their customers and that restricting the ability to purchase an item is tantamount to restricting that item's use." *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 743 (5th Cir. 2008). And in a case closely resembling this one, the Fourth Circuit allowed a firearms dealer to challenge Maryland's handgun-licensing regime on behalf of its customers, noting that "[c]ourts have invariably found that a vendor has a sufficiently close relationship with its customers when a challenged statute prevents that entity from transacting business with them" and that "[c]ourts have likewise consistently held that a vendor has third-party standing . . . regardless of whether a vendor's customers are hindered in bringing their own claims." *Md. Shall Issue*, 971 F.3d at 216.

Under this long line of precedent, a retailer that wishes to sell firearms is appropriately positioned to defend the rights of customers who wish to buy firearms, and it can be entrusted to do so with zeal. Bob's therefore has third-party standing to bring a constitutional challenge against New Jersey's permitting requirements, and all the State Defendants' standing arguments therefore fail.

20

## II.    **The Police Chiefs Are Proper Defendants.**

The Police Chiefs' Rule 12(b)(6) arguments are readily resolved. The Police Chiefs are proper defendants for the same reason as Superintendent Callahan, who did not object to being named a defendant. They are responsible for enforcing New Jersey law, including the challenged permitting laws. Pre-enforcement suits are routinely brought under 42 U.S.C. § 1983 against the Chiefs of Police in the jurisdictions where plaintiffs would be charged if they were to violate the challenged law. *See, e.g.*, *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 390 (1988).

The Police Chiefs argue that Plaintiffs cannot bring such a suit here because no Individual Plaintiff is alleged to have applied for and been denied a permit. *See* Police Chiefs' Br. at 11, 16–17. This argument collapses into the standing arguments discussed above and fails for the same reasons. The constitutional violation in this case is the existence of the permitting regime, not simply the manner in which it is applied. It therefore does not matter that these Defendants "were never given [the] opportunity" to deny any Individual Plaintiffs the ability to purchase a firearm. *Id*. at 18. The Individual Plaintiffs have already been denied their constitutional right to acquire a firearm without a permit because they have a "well-founded fear that the law will be enforced against them" by these Defendants if they did. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 160 (2014). Defendants have done nothing to assuage this fear, and Defendant Polillo likewise does not dispute that, as the Chief of Police

in the jurisdiction where Bob's is located, he would enforce the permitting laws and penalties against Bob's and the customers whose constitutional rights Bob's has standing to assert. *See supra* Part I.C. That suffices to create a justiciable controversy between Plaintiffs[2] and these Defendants. *See, e.g.*, *Diamond v. Charles*, 476 U.S. 54, 64 (1986) ("The conflict between state officials empowered to enforce a law and private parties subject to prosecution under that law is a classic 'case' or 'controversy' within the meaning of Art. III.").

Finally, the Police Chiefs' discussion of Section 1983's statute of limitations, *see* Police Chiefs' Br. at 13, 17, is irrelevant. Putting aside the allegations and evidence that delays continue to the present day, *see* Compl. ¶ 45, Plaintiffs are not suing about specific delays in the permitting process and certainly do not argue that the process would be constitutional if permits were consistently granted within the statutorily mandated 30 days. The many recorded delays illustrate the burdens inherent in the permitting regime. But once again, the existence of the regime itself violates the Second Amendment.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motions to Dismiss should be denied.

---

[2] The Police Chiefs do not expressly object to the Association Plaintiffs' standing. As discussed, these Plaintiffs have standing to assert the rights of (at least) their members—including the Individual Plaintiffs, who reside in the Police Chiefs' respective jurisdictions. *See supra* Part I.B.

Dated July 6, 2021                          Respectfully submitted,

Daniel L. Schmutter                         s/David D. Jensen
HARTMAN & WINNICKI, P.C.                     DAVID JENSEN PLLC
74 Passaic Street                           33 Henry Street, Suite 420
Ridgewood, New Jersey 07450                 Beacon, New York 12508
(201) 967-8040                              (212) 380-6615
(201) 967-0590 (fax)                        (914) 591-1318 (fax)
dschmutter@hartmanwinnicki.com              david@djensenpllc.com

*Attorney for Plaintiff Association of*     David H. Thompson*
*New Jersey Rifle & Pistol Clubs, Inc.*     Peter A. Patterson*
                                            Joseph O. Masterman*
                                            COOPER & KIRK, PLLC
                                            1523 New Hampshire Ave., N.W.
                                            Washington, D.C. 20036
                                            (202) 220-9600
                                            (202) 220-9601 (fax)
                                            dthompson@cooperkirk.com
                                            ppatterson@cooperkirk.com
                                            jmasterman@cooperkirk.com

                                            *Attorneys for Plaintiffs*

                                               *Appearing pro hac vice

## CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will cause a copy of the document to be served electronically on all parties or their counsel.

s/David D. Jensen
David D. Jensen

*Attorney for Plaintiffs*