UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
VICINAGE OF CAMDEN

| | | |
|---|---|---|
| SANDRA KENDRICK, ET AL. | : | HON. Robert J. Kugler, U.S.D.J. |
| | : | HON. Ann Marie Donie, U.S.M.J. |
| Plaintiffs, | : | Civil Action No. 21-6231 |
| v. | : | |
| ANDREW J. BRUCK, in his official capacity as Acting Attorney General of New Jersey, et al. | : | |
| Defendants. | : | |

___

REPLY BRIEF IN SUPPORT OF DEFENDANTS ANDREW J. BRUCK AND
PATRICK J. CALLAHAN'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1)

___

ANDREW J. BRUCK
ACTING ATTORNEY GENERAL OF NEW JERSEY
Attorney for Defendants
R.J. Hughes Justice Complex
P.O. Box 112
Trenton, New Jersey 08625
(609) 376-2440

Alec Schierenbeck
Deputy State Solicitor

Joseph C. Fanaroff
Assistant Attorney General

Stephanie M. Mersch
Deputy Attorney General
 On the Brief

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT……………………………………………….. 1

ARGUMENT ...................................................................................................1

   I.  THE INDIVIDUAL PLAINTIFFS LACK STANDING............................1

   II. THE ASSOCIATION PLAINTIFFS LACK STANDING ........................7

   III. BOB'S LITTLE SPORT SHOP LACKS STANDING ..........................11

CONCLUSION ................................................................................................15

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*A.N.S.W.E.R. Coalition v. Salazar*,
   915 F. Supp. 2d 93 (D.D.C. 2013) ..................................................................3, 4

*Action All. of Senior Citizens of Greater Philadelphia v. Heckler*,
   789 F.2d 931 (D.C. Cir. 1986) .............................................................................10

*Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Grewal*,
   910 F.3d 106 (3d Cir. 2018) .................................................................................5

*Bloedorn v. Grube*,
   631 F.3d 1218 (11th Cir. 2011) ............................................................................6

*Blunt v. Lower Merion Sch. Dist.*,
   767 F.3d 247 (3d Cir. 2014) .................................................................................7

*Bonidy v. U.S. Postal Serv.*,
   790 F.3d 1121 (10th Cir. 2015) ............................................................................5

*Connecticut Citizens Defense League, Inc. v. Lamont*,
   465 F. Supp. 3d 56 (D. Conn. 2020) ...............................................................10, 11

*Cottrell v. Alcon Labs.*,
   874 F.3d 154 (3d Cir. 2017) ...............................................................................12

*Craig v. Boren*,
   429 U.S. 190 (1976) .......................................................................................14, 15

*Davis v. Federal Election Com'n*,
   554 U.S. 724 (2008) ...........................................................................................13

*Dearth v. Holder*,
   641 F.3d 499 (D.C. Cir. 2011) ..............................................................................4

*Dombrowski v. Pfister*,
   380 U.S. 479 (1965) .............................................................................................5

*Donald J. Trump for President, Inc. v. Way*,
   2020 WL 6204477 (D.N.J. Oct. 22, 2020) ..........................................................9

*Fair Emp't Council of Greater Washington, Inc. v. BMC Mktg. Corp.*,
　28 F.3d 1268 (D.C. Cir. 1994) ...................................................................... 7, 8, 9

*Finkelman v. Nat'l Football League*,
　810 F.3d 187 (3d Cir. 2016) ................................................................................ 12

*Havens Realty Corp. v. Coleman*,
　455 U.S. 363 (1982) .................................................................................. 7, 9, 10, 11

*June Med. Servs. LLC v. Russo*,
　140 S. Ct. 2103 (2020) ..................................................................................... 14, 15

*Lane v. Holder*,
　703 F.3d 668 (4th Cir. 2012) ................................................................................ 8, 9

*Libertarian Party of Erie Cnty. v. Cuomo*,
　976 F.3d 106 (2d Cir. 2020) ................................................................................. 2, 4

*Lopez v. Candaele*,
　630 F.3d 775 (9th Cir. 2010) .................................................................................... 5

*Lujan v. Defs. Of Wildlife*,
　504 U.S. 555 (1992) ................................................................................................... 2

*Madsen v. Boise State Univ.*,
　976 F.2d 1219 (9th Cir. 1992) ................................................................................ 2

*Massachusetts v. EPA*,
　549 U.S. 497 (2007) ................................................................................................ 13

*Md. Shall Issue, Inc. v. Hogan*,
　971 F.3d 199 (4th Cir. 2020) ..................................................................... 2, 3, 6, 12

*Md. Shall Issue v. Hogan*,
　353 F. Supp. 3d 400 (D. Md. 2018) ..................................................................... 9

*NAACP v. City of Kyle*,
　626 F.3d 233 (5th Cir. 2010) ................................................................................ 10

*New Mexico Health Connections v. U.S. Dep't of Health and Human Servs.*,
　946 F.3d 1138 (10th Cir. 2019) .............................................................................. 6

iii

*Parker v. District of Columbia*,
    478 F.3d 370 (D.C. Cir. 2007) ..................................................................5, 6

*Penn. Prison Soc. v. Cortes*,
    508 F.3d 156 (3d Cir. 2007) ..........................................................................7

*People for the Ethical Treatment of Animals (PETA) v. Dep't of Agric.*,
    797 F.3d 1087 (D.C. Cir. 2015) ................................................................9, 10

*Presbytery of New Jersey of Orthodox Presbyterian Church v. Florio*,
    40 F.3d 1454 (3d Cir. 1994) ..........................................................................4

*Safari Club Intern. v. Jewell*,
    84 F.3d 1280 (D.C. Cir. 2016) ......................................................................1

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*,
    678 F.3d 235 (3d Cir.2012) ..............................................................12, 13, 14

*Seegars v. Gonzales*,
    396 F.3d 1248 (D.C. Cir. 2005) ....................................................................6

*Southern Blasting Servs., Inc. v. Wilkes Cnty., NC*,
    288 F.3d 584 (4th Cir. 2002) ........................................................................1

*Spokeo, Inc. v. Robbins*,
    136 S.Ct. 1540 (2016) .................................................................................11

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) .....................................................................................7

*Tenth Street Residential Assoc. v. City of Dallas, Tex.*,
    968 F.3d 492 (5th Cir. 2020) ......................................................................10

*United States v. DeCastro*,
    682 F.3d 160 (2d Cir. 2012) .....................................................................2, 3

*Westfall v. Miller*,
    77 F.3d 868 (5th Cir. 1996) ..........................................................................2

## PRELIMINARY STATEMENT

Plaintiffs' Opposition confirms that they lack Article III standing to challenge New Jersey's firearms licensing regime. As to the Individual Plaintiffs, courts have consistently held that individuals who have not applied for a permit under a state's firearms licensing regime lack standing to challenge its legality. The Association Plaintiffs cannot assert standing to challenge a law based solely on resources they have purportedly expended opposing that policy. And Bob's, a firearms seller, has not plausibly alleged an economic injury on its own behalf and cannot sidestep the constitutional requirement of Article III standing by asserting third-party standing on behalf of its customers. Even if, moreover, Bob's could assert standing to challenge recordkeeping requirements imposed on firearms sellers, it could not use that narrow injury to challenge *other* aspects of New Jersey's permitting laws aside from recordkeeping requirements, as plaintiffs must have standing with respect to each and every claim they seek to press. The Complaint should be dismissed.

## ARGUMENT

I.  **THE INDIVIDUAL PLAINTIFFS LACK STANDING**

As explained in Defendants' opening brief (at 12-13), it is blackletter law that in order to have standing to challenge a permitting scheme, a plaintiff must generally apply for a permit. *See, e.g.*, *Southern Blasting Servs., Inc. v. Wilkes Cnty., NC,* 288 F.3d 584, 595 (4th Cir. 2002); *Safari Club Intern. v. Jewell*, 84 F.3d 1280, 1285-86

(D.C. Cir. 2016); *Madsen v. Boise State Univ.*, 976 F.2d 1219, 1220 (9th Cir. 1992). Accordingly, courts have consistently held that individuals who have not applied for a permit lack standing to challenge a gun permitting scheme. *See, e.g.*, *Libertarian Party of Erie Cnty. v. Cuomo*, 976 F.3d 106, 121-22 (2d Cir. 2020); *United States v. DeCastro*, 682 F.3d 160 (2d Cir. 2012); *Westfall v. Miller*, 77 F.3d 868, 872 (5th Cir. 1996). The reason for this standing rule is simple: a plaintiff who does not even apply for a permit is in the same position as "all members of the public," and such a "generalized grievance" is "an inadequate basis on which to grant standing." *Md. Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 219-20 (4th Cir. 2020) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 575-76 (1992)). Rather than dispute the existence of this rule, Plaintiffs offer various grounds for this Court to ignore it. All fail.

*First*, Plaintiffs suggest that the rule that a plaintiff must apply for a permit to challenge a permitting scheme does not control where a plaintiff challenges the existence of the permitting "policy itself." Opp. 8-9; *see id.* at 5-6 (arguing that the Individual Plaintiffs have standing because they challenge the mere "existence of New Jersey's permitting scheme"). But Plaintiffs do not and cannot cite any case adopting their position. To the contrary, courts have squarely held that a plaintiff challenging the very existence of a firearm permitting scheme must still apply for a permit to have standing. *See, e.g., Libertarian Party*, 976 F.3d at 114 (plaintiffs lacked standing with respect to claim that the "State ha[d] no authority to license" firearms whatsoever);

*Decastro*, 682 F.3d at 164 (party lacked standing where "[t]he premise of Decastro's argument is that New York's permitting scheme is itself constitutionally defective; his argument is therefore tantamount to a challenge to that scheme."); *Md. Shall Issue*, 971 F.3d at 219 (plaintiffs lacked standing where they challenged "the existence of the [handgun licensing regime] itself").

*Second*, retreating from the Second Amendment context of their claims altogether, Plaintiffs rely on inapposite First Amendment cases to argue that they do not need to apply for a permit to have standing. Opp. at 6-7. But even these First Amendment cases do not suggest that an individual may challenge a permitting scheme without applying for a permit. Take Plaintiffs' lead authority, *A.N.S.W.E.R. Coalition v. Salazar*, 915 F. Supp. 2d 93 (D.D.C. 2013). While Plaintiffs seize (at 6) on the district court's comment that "[a] permit denial … is not a prerequisite to establish standing," that portion of the opinion concerned conduct *that was not subject to a permitting scheme at all*. Obviously, as the district court explained, a plaintiff is not required to try to "obtain a permit" where "[a] permit is not needed to engage in th[at] kind of conduct" in the first place. *Id.* at 103. But nothing in *A.N.S.W.E.R.* suggests a plaintiff may challenge a permitting scheme without applying for a permit. To the contrary, to the extent the plaintiff in *A.N.S.W.E.R.* challenged the permitting scheme at issue there, the district court stressed that the plaintiff had standing *because it applied for the permit*. *See id.* at 102 (explaining that "the Court previously held that [Plaintiff]

had … standing to litigate claims with respect to denials of permit applications"); *id.* at 103 (plaintiff "had organizational and representational standing to litigant claims related to an anticipated permit denial" because "the courts have consistently treated a license or permit denial pursuant to a state or federal administrative scheme as an Article III injury.") (internal quotation marks and citation omitted).[1]  As for the Third Circuit's decision in *Presbytery of New Jersey of the Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454 (3d Cir. 1994), that case did not concern a permitting scheme at all, and thus has no bearing on a party's standing to challenge a permitting scheme.

Even if, moreover, any of Plaintiffs' First Amendment authorities suggested that the general permit application rule does not apply in that context (and they do not), extending that First Amendment rule to the Second Amendment would be inappropriate.  "Because of the sensitive nature of constitutionally protected expression," the Supreme Court has relaxed the standing requirements for certain First

---

[1] The case *A.N.S.W.E.R.* cited for the proposition that "[a] permit denial … is not a prerequisite to establish standing"—*Dearth v. Holder*, 641 F.3d 499 (D.C. Cir. 2011)— cuts against Plaintiffs as well.  There, the court held that a person had standing to challenge a gun permitting scheme where the plaintiff "twice attempted to go through the 'formal process' of applying to purchase a firearm" but was unable to complete the process because of aspects of the permitting process he sought to challenge.  *Id.* at 502. Here, no plaintiff has alleged that they have tried to apply for a permit or that they would be unable to complete the application.  *Dearth* thus stands for the proposition that if a permitting process cannot be completed, a plaintiff need not wait for a "denial" of a permit that will never come.  *See Libertarian Party*, 970 F.3d at 106 (explaining that a party may challenge a permitting scheme without applying if an application would have been "futile").

Amendment claims. *Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965); *see Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010) (collecting cases). But those special First Amendment concerns are not implicated by a Second Amendment claim. Indeed, it would be inappropriate to "wholesale incorporate[]" First Amendment doctrine "into the Second Amendment" given that "'the risk inherent in firearms and other weapons distinguishes the Second Amendment right from other fundamental rights." *Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Grewal*, 910 F.3d 106, 122 n.28 (3d Cir. 2018) (quoting *Bonidy v. U.S. Postal Serv.*, 790 F.3d 1121, 1126 (10th Cir. 2015)).

*Third*, Plaintiffs cite caselaw concerning a plaintiff's standing to challenge a statute where a plaintiff faces a credible threat of "arrest or prosecution." Opp. at 7. But they offer no authority suggesting that the existence of penalties for acting without a permit is an end-run around the requirement that a plaintiff apply for a permit in order to have standing to challenge a permitting scheme. After all, if such penalties were sufficient to confer standing, then the basic rule that one must apply for a permit to have standing would be effectively a dead letter. Courts, moreover, have rejected the exact argument raised by Plaintiffs. In *Parker v. District of Columbia*, 478 F.3d 370 (D.C. Cir. 2007)—upon which Plaintiffs themselves rely (at 6)—the court held that parties who sought to challenge D.C.'s gun registration laws could not establish Article III standing based on the general fear that they would be prosecuted for owning firearms in contravention of a permitting scheme absent allegations that they had been

5

"singled out or uniquely targeted by the D.C. government for prosecution." *Id.* at 375; *see Maryland Shall Issue*, 971 F.3d at 218 (a "generalized fear and concern" that the state will enforce a gun permitting regime does not constitute a "credible threat of prosecution" sufficient to confer standing); *Seegars v. Gonzales*, 396 F.3d 1248, 1255 (D.C. Cir. 2005) (state's general interest in enforcing its gun laws was insufficient to confer standing on plaintiffs). While *Parker* rejected any claim to standing on the basis of a threat of enforcement, it held that the plaintiff there had standing because he had "applied for and been denied a registration certificate to own a handgun." *Id.* at 375.[2] Because the Individual Plaintiffs have not even attempted to apply for a permit under New Jersey's regime, they lack standing to challenge its constitutionality.[3]

---

[2] *Bloedorn v. Grube*, 631 F.3d 1218 (11th Cir. 2011) does not support Plaintiffs' claim to standing either. There, the plaintiff had standing to challenge a speech-related permitting scheme because he was "arrested after refusing to apply for a permit" and that prior prosecution, coupled with an intention to engage in the same unpermitted conduct again, created a "credible threat" of further prosecution. *Id.* at 1228-29 (emphasis added). Here, no plaintiff has been arrested for failing to comply with New Jersey's permitting scheme.

[3] Plaintiffs separately argue (at 11 n.1) that the rule that a plaintiff must apply for a permit invites "gamesmanship" because the State could simply grant a permit and thereby moot a claim for injunctive relief. But well-established exceptions to mootness doctrine, such as the voluntary cessation exception and the capable of repetition yet evading review exception, can address any such concerns. *See New Mexico Health Connections v. U.S. Dep't of Health and Human Servs.*, 946 F.3d 1138, 1159 (10th Cir. 2019) (noting that the "voluntary cessation … exception is designed to counteract gamesmanship, such as a defendant ceasing illegal action long enough to render a lawsuit moot before resuming the illegal conduct.").

## II. THE ASSOCIATION PLAINTIFFS LACK STANDING

As explained in Defendants' opening brief (15-17), because the Association Plaintiffs do not identify any of their members who have applied for a permit and thus would have standing to challenge New Jersey's scheme, they cannot assert standing on their members' behalf. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009) (explaining that courts "require[] plaintiff-organizations to make specific allegations establishing that at least one identified member had suffered or would suffer harm."); *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 280 (3d Cir. 2014) (same).

Nor can the Association Plaintiffs establish standing on the grounds that New Jersey's permitting regime injures their own rights. *See* Mot. at 17-21. As the Third Circuit has explained, "organizations … are unable to establish standing solely on the basis of institutional interest in a legal issue." *Penn. Prison Soc. v. Cortes*, 508 F.3d 156, 162 (3d Cir. 2007). Instead, the Association Plaintiffs must allege that a "defendant's actions 'perceptibly impair' the organization's ability to provide services." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 285 (3d Cir. 2014) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982)). To meet that test, a group must do more than show it has "divert[ed] resources from one program to another" in order to "counteract the defendants' assertedly illegal practices": it must show that "defendants' actions themselves … inflicted" an "alleged injury" "upon the organization's resources." *Fair Emp't Council of Greater Washington, Inc. v. BMC*

*Mktg. Corp.*, 28 F.3d 1268, 1277 (D.C. Cir. 1994). To hold otherwise would be to invite the "circular position" that "the time and money that plaintiffs spend in bringing suit against a defendant would itself constitute a sufficient 'injury in fact'" and "effectively abolish the requirement altogether." *Id.*

Plaintiffs concede (at 12) that two of the five Association Plaintiffs—FPC and SAF—have no claim to organizational standing.[4] Nevertheless, they argue that the other Association Plaintiffs have standing based on the conclusory allegation that they have "devoted significant resources to identify and counteract" New Jersey's firearm scheme. Opp. at 14 (citing ECF 1 ¶ 55). But devotion of resources to address New Jersey's laws is precisely the kind of "self-inflicted" harm, resulting from a plaintiff's own "budgetary choices" that cannot give rise to organizational standing. *Fair Emp't*, 28 F.3d at 1276-77. Courts have rejected similar attempts by firearms advocacy organizations to engineer organizational standing by alleging that they have expended resources to address disfavored firearms regulations. *See, e.g.*, *Lane v. Holder*, 703 F.3d 668, 675 (4th Cir. 2012) (rejecting claim that SAF—a plaintiff in this case—had

---

[4] It is far from clear how Plaintiffs can concede that FPC and SAF lack organizational standing while maintaining that the other Association Plaintiffs can establish such standing. FPC has allegedly "expended and diverted organizational resources … against New Jersey's restrictions on firearm acquisition," ECF 1 ¶ 17, and yet the expenditure of resources by ANJRPC, NJ2AS, and CNJFO is the (erroneous) basis for Plaintiffs' claim that these groups have standing, Opp. at 14.

8

organizational standing because it expended resources "in response to legislation"); *see also Md. Shall Issue v. Hogan*, 353 F. Supp. 3d 400, 408 (D. Md. 2018).

Plaintiffs baldly assert (at 15) that *Lane* does not disapprove organizational standing based solely on a group's expenditure of resources to combat a disfavored law, but that is precisely what it held. Indeed, a court in this district recently applied *Lane* to reject a claim to organizational standing based on a group's alleged "diversion of resources." *Donald J. Trump for President, Inc. v. Way*, 2020 WL 6204477, at *11 (D.N.J. Oct. 22, 2020) (unpublished). As it explained, "[f]inding a cognizable injury because an organization spends money on routine costs such as hiring, training, and educating staff in response to a new law," would allow a plaintiff "to bootstrap standing by expending its recourse merely in response to the actions of another." *Id.* (citing *Lane*, 703 F.3d at 675).

Plaintiffs' cited authorities (at 12-13) do not aide its cause. As the D.C. Circuit has explained, the Supreme Court's decision in *Havens*, 455 U.S. 363, did not hold that an organization could "base standing on the diversion of resources from one program to another, but rather on the alleged injury that the defendants' actions themselves had inflicted upon the organization's programs." *Fair Emp't*, 28 F.3d at 1277. *People for the Ethical Treatment of Animals (PETA) v. Department of Agriculture.*, 797 F.3d 1087 (D.C. Cir. 2015), explains the difference well. There, the court found that PETA had standing based *not* on any "self-inflicted" "diversion of resources" or because the law

9

"impaired … pure issue-advocacy," but because the challenged policy directly "denied [PETA] access to information and avenues of redress they wish[ed] to use in their routine information-dispensing, counseling, and referral activities." *Id.* at 1094 (cleaned up). In other words, "'unlike the mere interest in a problem or [an] ideological injury,' the plaintiffs had 'alleged inhibition of their daily operations, an injury both concrete and specific to the work in which they are engaged.'" *Id.* at 1094 (quoting *Action All. of Senior Citizens of Greater Philadelphia v. Heckler*, 789 F.2d 931, 938 (D.C. Cir. 1986)).

Here, the Association Plaintiffs do not—and could not—plausibly allege that New Jersey's gun permitting scheme "perceptibly impair[s]" their ability to advocate for gun ownership. *Havens*, 455 U.S. at 379. To the contrary, as Defendants explained in their opening brief (at 20-21), the actions that the Association Plaintiffs claim to have taken in response to New Jersey's gun permitting laws are part and parcel of their everyday mission: firearms advocacy. *See Tenth Street Residential Assoc. v. City of Dallas, Tex.*, 968 F.3d 492, 500 (5th Cir. 2020) (rejecting claim to organizational standing where plaintiff's efforts did not "detract or 'differ from its routine activities.'") (quoting *NAACP v. City of Kyle*, 626 F.3d 233, 238 (5th Cir. 2010)).[5] The

---

[5] This fact distinguishes the present case from *Connecticut Citizens Defense League, Inc. v. Lamont*, 465 F. Supp. 3d 56, 67-68 (D. Conn. 2020), cited by Plaintiffs (at 13). In *Citizens Defense League*, the Plaintiffs alleged that the challenged policy forced them to provide "*new* services" as opposed to spending new resources on services it was "*already* providing." *Id.* at 67-68. Here, however, even assuming the expenditure

10

Association Plaintiffs may disagree with New Jersey's gun permitting laws. But "a setback to [an] organization's abstract social interests" does not confer to Article III standing. *Havens*, 455 U.S. at 379.

### III. BOB'S LITTLE SPORT SHOP LACKS STANDING

According to Plaintiffs, Bob's has established injury through its bare assertion that "[s]ome potential customers have reserved firearms and never completed the purchase" and "Bob's has reason to believe that this lost business is due to the burdens of the permitting process." ECF 1 ¶ 54. But as Defendants explained in their opening brief (21-23), that threadbare allegation cannot satisfy Plaintiffs' obligation to "allege facts demonstrating" an "actual," as opposed to a "conjectural or hypothetical" injury that is "fairly traceable to the challenge conduct." *Spokeo, Inc. v. Robbins*, 136 S.Ct. 1540, 1547-48 (2016). After all, there are countless reasons why a customer might fail to purchase a firearm from Bob's after reserving it that have nothing to do with New Jersey's permitting scheme. Mot. at 22. Plaintiffs allege *no* facts to support Bob's "belief" that any drop off between reserved firearms and consummated transactions is attributable to New Jersey's scheme.

In response, Plaintiffs argue (at 17-18) that—at the pleading stage—its conclusory allegation "must be credited." But in considering a motion to dismiss for

---

of resources alone can give rise to standing, the Association Plaintiffs allege that they have expended resources on their same, ordinary activities. Mot. at 20-21.

11

lack of standing, courts "eliminate from consideration any allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth'" and "[s]peculative or conjectural assertions are not sufficient." *Finkelman v. Nat'l Football League*, 810 F.3d 187, 194 (3d Cir. 2016) (quoting *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir.2012)). Nor can Plaintiffs fill the gaps in their deficient pleading on the theory (advanced in their papers, not the Complaint) that any law that affects the market for firearms must, invariably, affect Bob's bottom line. Opp. at 17-18. By that logic, a business would have Article III standing to challenge virtually any regulation on the unsupported theory that it incrementally increases the cost of its operations or the goods or services it trades. Plaintiffs must do more than invoke the "economic principle of supply and demand" to establish standing: they must allege "facts to support their assertion" of economic harm. *Cottrell v. Alcon Labs.*, 874 F.3d 154, 169 (3d Cir. 2017). Nor can Plaintiffs rely on *Maryland Shall Issue* to support Bob's claim to standing: there, the vendor supported its claim to standing by pointing to actual facts—namely, an alleged drop in handgun sales temporally related to when the licensing law went into effect. 971 F.3d at 211.

Neither can Bob's assert Article III standing to challenge New Jersey's permitting law based on the recordkeeping requirements New Jersey imposes on sellers. For one, because New Jersey's recordkeeping requirements overlap with

federal recordkeeping requirements, a decision lifting state requirements would not redress any supposed injury, as the administrative burdens associated with recordkeeping would remain in place.  Mot. at 23-24.  Plaintiffs respond (at 19) that an injury may be redressable even if a "favorable decision will" not relieve "*every* injury," *Massachusetts v. EPA*, 549 U.S. 497, 525 (2007), but they fail to identify *any* recordkeeping burden that would be relieved by a favorable decision in this case.  That failure is fatal to Bob's claim to standing, as a plaintiff must "show[] that a favorable decision will relieve a discrete injury to himself."  *Id.*

Separately, even if Bob's does suffer some redressable injury from the State's recordkeeping requirements, that injury would not give Bob's standing to challenge *other* aspects of New Jersey's permitting laws aside from recordkeeping requirements.  Mot. at 24-25.  That is because "[s]tanding is not dispensed in gross" but rather "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought."  *Davis v. Federal Election Comm'n*, 554 U.S. 724, 733-34 (2008).  Plaintiffs offer *no* response on this score.  Opp. at 18-19.  Rather, Plaintiffs effectively ask this Court to conflate any standing Bob's would have to challenge state rules concerning recordkeeping imposed on *sellers* like Bob's with the standing needed to pose a claim challenging permitting rules imposed on *buyers*.  But "the standing inquiry requires careful judicial examination of a complaint's allegations to ascertain

13

whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Schering*, 678 F.3d at 245.

Because Bob's has not plausibly alleged Article III standing to challenge New Jersey's permitting laws, whether it would be entitled to assert third-party standing is irrelevant. *See* Mot. 26-27. After all, only a party with its own Article III "standing to challenge the lawfulness" of a provision" may be "entitled to assert those concomitant rights of third parties that would be 'diluted or adversely affected' should her constitutional challenge fail and the statutes remain in force." *Craig v. Boren*, 429 U.S. 190, 195 (1976) (citation omitted).

Nevertheless, for the reasons explained by Defendants (Mot. at 25-29), Bob's does not meet the prerequisites for third-party standing. Indeed, in *June Med. Servs. LLC v. Russo*, 140 S. Ct. 2103 (2020), the Supreme Court clarified that *Craig* did not adopt an inflexible rule that vendors always have third-party standing to assert claims on behalf of their customers. *Id.* at 2119. Faced with a claim to third-party standing, courts must ask whether a vendor seeks to challenge a "law that regulates their conduct," not that of others, such that that its claims are not "abstract or hypothetical." *Id.* Here, however, the "legal duties" imposed by New Jersey's permitting law fall overwhelmingly on the potential *buyer* of a firearm, not the seller. *Id. June* also clarified that "the parties who must actually go through the process of applying for and maintaining" a legal privilege are "far better positioned … to address the burdens of

14

compliance" and are thus the "'least awkward' and most 'obvious' claimants" to assert a legal claim. *Id.* (quoting *Craig*, 429 U.S. at 197). But here, it is firearms *buyers* who must go through the process of obtaining an FID and/or HPP, and are thus the "obvious claimants" to challenge New Jersey's permitting laws. *Id.*

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed.

Respectfully Submitted,

ANDREW J. BRUCK
ACTING ATTORNEY GENERAL OF NEW JERSEY

By: /s/ Stephanie M. Mersch
    Stephanie M. Mersch
    Deputy Attorney General

Dated:    July 26, 2020