IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| SANDRA KENDRICK, et al.; | : |
| Plaintiffs, | : |
| v. | : Civil No. 21-6231 (RBK/AMD) |
| ANDREW BRUCK, et al.; | : **OPINION** |
| Defendants. | : |

**KUGLER**, United States District Judge:

This lawsuit challenges the constitutionality of New Jersey's fees and permit requirements for firearm ownership. The Plaintiffs are three individuals, one firearms dealer, and five associations. The Plaintiffs bring this action against the New Jersey Attorney General (presently Acting Attorney General Andrew Bruck), Superintendent of the New Jersey Division of State Police Patrick Callahan, Bridgeton Chief of Police Michael Gaimari, Harrison Township Chief of Police Ronald Cundey, and Glassboro Borough Chief of Police John Polillo.

The Plaintiffs bring this action pursuant to 42 U.S.C. § 1983, alleging that New Jersey state statutes regulating the transfer and possession of firearms violate their rights under the Second Amendment as incorporated against the states by the Fourteenth Amendment. Plaintiffs seek a declaration that New Jersey's Firearms Purchaser Identification Card ("FID") and Handgun Purchase Permit ("HPP") requirements and implementing regulations facially violate the Second and Fourteenth Amendments to the United States Constitution. They also seek an injunction prohibiting Defendants and their officers, agents, and employees from enforcing the FID and HPP

requirements, nominal damages, attorneys' fees, expert fees, and any and all further relief that this Court deems just and proper.

Presently before the Court are Defendants Cundey and Polillo's Motion to Dismiss (Doc. No. 33) for failure to state a claim and Defendants Bruck and Callahan's Motion to Dismiss (Doc. No. 34) for lack of standing. For the reasons detailed herein, the motions are **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

### a. New Jersey firearms purchasing laws

The process for purchasing a rifle in New Jersey is as follows. First, a purchaser must have a valid Firearms Purchaser Identification Card, unless she is a licensed firearms dealer or is purchasing an "antique" rifle or shotgun. N.J.S.A. 2C:58-3(b)(1). An applicant must complete the S.T.S. 033 form, obtainable "from municipal police departments, State Police stations, and licensed retail firearms dealers." N.J.A.C. 13:54-1.4(a). The form can also be completed online through the State's Firearms Application & Registration Systems ("FARS"), but to do so the applicant "must first obtain an Originating Agency Identifier (ORI) Number" from the local police department or State Police station that will process the application. The form instructs the applicant to list her Social Security number, distinctive physical characteristics, whether she "suffer[s] from a physical defect or disease," and other personal details. See Ex. 1 (S.T.S. 033 form). If the applicant "gives . . . any false information" on the form, she "is guilty of a crime of the third degree," N.J.S.A. 2C:39-10(c), which carries a prison sentence of three to five years, *see* N.J.S.A. 2C:43-6(a)(3), and a fine of up to $15,000, *see* N.J.S.A. 2C:43-3(b)(1). In addition, the applicant must "provide the names and addresses of two reputable citizens" as personal references. N.J.A.C. 13:54-1.4(c). The applicant must also complete the S.P. 66 form, thereby waiving the privacy of

her mental-health records, "including disclosure of the fact that said records may have been expunged," by consenting to their disclosure as part of the application. N.J.A.C. 13:54-1.4(d). The applicant must also submit two sets of her fingerprints. N.J.A.C. 13:54-1.4(c)–(d). Unless the applicant has already "been fingerprinted before for firearm purposes," she must schedule an appointment with the State's fingerprinting vendor, IdentoGo, and visit an IdentoGo location with personal identification. If the applicant has already been fingerprinted for firearms purposes, the relevant licensing authority (the Chief of Police or the Superintendent of State Police) still has discretion to make the applicant be fingerprinted again. N.J.A.C. 13:54-1.4(g); N.J.S.A. 2C:58-3(e). The application fee is $5.00 and is nonrefundable. N.J.A.C. 13:54-1.4(d). If an online applicant enters an incorrect ORI number, she "will then have to re-apply using the correct ORI number and pay for the process again." IdentoGo's current fingerprinting fee is over $50. These fees are in addition to the $15 cost of the criminal background check at the point of sale, N.J.S.A. 2C:58-3(b)(3)(c), which is routinely passed onto the purchaser. The $15 fee is entirely attributable to New Jersey law. The federal government does not impose any fees for accessing the background check system.

  An applicant who resides in a municipality with a full-time police department must submit the application to the department; other resident applicants must submit their applications to their municipalities' State Police stations; and non-residents may submit their applications to any State Police station. *See* N.J.A.C. 13:54-1.4(e). Upon receipt, the licensing authority "shall investigate" the application, *id.*, including through a background check in which the applicant's fingerprints are "compared with any fingerprints maintained by the State Bureau of Identification and the Federal Bureau of Investigation." N.J.A.C. 13:54-1.4(f); *see also* N.J.S.A. 2C:58-3(e). Absent "good cause" for denial, the licensing authority "shall grant" an FID card "within 30 days from

the date of receipt of the application for residents of this State and within 45 days for nonresident applicants." N.J.S.A. 2C:58-3(f).

In reality, applicants often wait much longer. The statute and implementing regulations provide no means to enforce the 30- or 45-day deadlines. The New Jersey Firearm Purchase and Permitting Study Commission recorded permitting delays "in approximately 100 different jurisdictions," some of more than a year. (Compl. ¶ 40). Delays continue to be widespread and have been exacerbated over this past year. (Compl. ¶ 41).

At the licensed firearms dealer, the purchaser must show her FID card, certify that she is qualified to purchase a firearm under N.J.S.A. 2C:58-3(c), and list her name, address, and FID-card number. N.J.S.A. 2C:58-3(b)(1). Except for certain circumstances, this transaction must be "conduct[ed] . . . through a licensed retail dealer." N.J.S.A. 2C:58-3(b)(2) (exempting transactions between "members of an immediate family," "law enforcement officers," and federally licensed "collectors of firearms or ammunition as curios or relics," as well as "temporary transfer[s]" under N.J.S.A. 2C:58-3.1 and -3.2 for sport and training purposes). The licensed retail dealer must complete a criminal background check of the purchaser before completing the transaction.

"[E]very retail dealer shall maintain a record" of such transactions, "which shall be maintained at the address set forth on the retail dealer's license for inspection by a law enforcement officer during reasonable hours." N.J.S.A. 2C:58-3(b)(3)(b). "Any person who knowingly has in his possession any rifle or shotgun without having first obtained a firearms purchaser identification card in accordance with [N.J.S.A. 2C:58-3] is guilty of a crime of the third degree," N.J.S.A. 2C:39-5(c)(1), which carries a prison sentence of three to five years, *see* N.J.S.A. 2C:43-6(a)(3), and a fine of up to $15,000, *see* N.J.S.A. 2C:43-3(b)(1).

The requirements for acquiring a handgun are the same as above, with additional restrictions. The purchaser, in addition to her FID card, must have a Permit to Purchase a Handgun or a handgun carry permit. N.J.S.A. 2C:58-3(a)(1), (b), (e). Generally, anyone who is not a law-enforcement officer or a licensed dealer may acquire "[o]nly one handgun" with a given permit and may not purchase "more than one handgun" in the State "within any 30-day period." N.J.S.A. 2C:58-3(i). There are exemptions for purchases "for use by officers in the actual performance of their law enforcement duties," purchases by a federally licensed "collector of handguns as curios or relics," transfers among licensed dealers and manufacturers or from any person to a licensed dealer or manufacturer, exchanges within 30 days of a purchase from a retail dealer, and transactions exempted by the Superintendent under N.J.S.A. 2C:58-3.4. *Id.*

b. **The Plaintiffs**

The Individual Plaintiffs are Sandra Kendrick, Carol Kinkade and Nancy Merritt of Harrison Township. Due to their advancing age and to social unrest, the Individual Plaintiffs wish to purchase firearms. They possess neither FID cards nor HPPs. Ms. Kendrick is personally familiar with the wait time in excess of thirty days for HPP applications. Her husband, a law-abiding nurse working for the state, waited seven months for his.

The Dealer Plaintiff is Bob's Little Sport Shop, located in Glassboro Borough. As a licensed firearms dealer, the Dealer Plaintiff is subject to recordkeeping and administrative requirements. The Dealer Plaintiff alleges harm due to lost sales and to recordkeeping requirements.

The Association Plaintiffs are Association of New Jersey Rifle & Pistol Clubs, Inc., New Jersey Second Amendment Society, Coalition of New Jersey Firearm Owners, Firearms Policy Coalition, Inc., and Second Amendment Foundation. The organizational Plaintiffs have members

who reside in New Jersey and who are subject to the State's restrictions on acquiring firearms. In addition, they have expended resources documenting delays in the permitting process, offering guidance to members and other citizens subject to such delays, and petitioning the Governor to reform the process. All five of the Association Plaintiffs bring this action on behalf of their members. Three of the Association Plaintiffs—Association of New Jersey Rifle & Pistol Clubs, Inc. (ANJRPC), New Jersey Second Amendment Society (NJ2AS), and Coalition of New Jersey Firearm Owners (CNJFO) also bring this matter on behalf of themselves.

### c. The Defendants

Defendant Andrew Bruck is Acting Attorney General of New Jersey. He is automatically substituted as Defendant in place of former Attorney General Gurbir Grewal. Fed. R. Civ. P. 25(d). The Attorney General of New Jersey exercises, delegates, or supervises all the powers and duties of the New Jersey Department of Law and Public Safety, including the Division of State Police within that Department, which is responsible for executing and enforcing New Jersey's laws and regulations governing the possession of firearms.

Defendant Patrick J. Callahan is the Superintendent of the New Jersey Division of State Police. Subject to the oversight and supervision of the Attorney General, Defendant Callahan exercises, delegates, or supervises all the powers and duties of the New Jersey Division of State Police, including executing and enforcing New Jersey's firearm permitting laws and regulations. The State Police also has direct law-enforcement responsibility for the jurisdiction where Individual Plaintiff Sandra Kendrick resides.

Defendant Ronald Cundey is the Chief of Police of the Harrison Township Police Department and is the chief law-enforcement officer of the municipality where Individual Plaintiff Nancy Merritt resides. Defendant John Polillo is the Chief of Police of the Glassboro Police

Department and is the chief law-enforcement officer of the municipality where Dealer Plaintiff Bob's Little Sport Shop is located.

## II. New Jersey Attorney General and State Police Superintendent's 12(b)(1) Motion

Defendants Attorney General of New Jersey (now Acting Attorney General Andrew Bruck) and Superintendent of the New Jersey Division of State Police Patrick Callahan move to dismiss the Complaint pursuant to 12(b)(1) for lack of standing. Standing is jurisdictional, so we address this motion first.

### a. Legal standard

"Under Article III of the United States Constitution, the power of the judiciary 'extends only to 'Cases' and 'Controversies.'" *Long v. Se. Pa. Transp. Auth.*, 903 F.3d 312, 320 (3d Cir. 2018) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016)). This limits our jurisdiction to cases "which are appropriately resolved through the judicial process." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "One element of the case-or-controversy requirement is that [plaintiffs], based on their complaint, must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997).

The Third Circuit recognizes two distinct types of standing challenges: facial and factual. *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). We accept the pleadings as true when faced with a facial challenge, but not when faced with a factual challenge. *Id*. Where, as here, the standing challenge does not attack the validity of any facts pleaded, and only attacks the sufficiency of the complaint on the ground that the facts as pleaded do not establish standing, we treat the motion as a facial challenge. *In re Horizon Healthcare Servs. Data Breach Litig.*, 846 F.3d 625, 632-33 (3d Cir. 2017). Because this is a facial challenge, we accept Plaintiffs' well-pleaded factual allegations as true and draw reasonable inferences from those allegations in their favor. *Id.* at 633

(citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Constitution Party v. Aichele,* 757 F.3d 347, 358 (3d Cir. 2014) ("[A] facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), *i.e.*, construing the alleged facts in favor of the nonmoving party.")

The standing doctrine "limits the category of litigants empowered to maintain a lawsuit in federal court" and has "developed in our case law to ensure that federal courts do not exceed their authority as it has been traditionally understood." *Spokeo*, 578 U.S. at 338. To maintain a suit, a plaintiff must show "(1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016) (internal quotations and citations omitted). A plaintiff "must allege facts that affirmatively and plausibly suggest that it has standing to sue. Speculative or conjectural assertions are not sufficient." *Id*. at 194. The burden of establishing standing rests with the plaintiffs. *Berg v. Obama*, 586 F.3d 234, 238 (3d Cir. 2009).

The first element, "injury in fact" requires the plaintiff to show "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations and quotations omitted). To be concrete, the injury must be "'real," and not "abstract." *Spokeo*, 578 U.S. at 339. An injury is sufficiently particularized if "it affects the plaintiff in a personal and individual way." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 278 (3d Cir. 2014) (internal citations omitted). A harm is actual or imminent "where it is presently or actually occurring, or is sufficiently imminent." *Id.*

8

### b. DISCUSSION

We address each group of Plaintiffs separately.

### i. Individual Plaintiffs

Defendants argue that the Individual Plaintiffs have not sufficiently alleged an injury – that without having applied for an FID or HPP, and without alleging that such an application would be futile, the Individual Plaintiffs do not have a particularized injury.

Generally, a plaintiff must submit to a government policy in order to have standing to challenge that policy. *See Jackson-Bey v. Hanslmaier*, 115 F.3d 1091, 1096 (2d Cir. 1997) (collecting cases). There is a recognized exception to this requirement if a plaintiff makes a substantial showing that submitting to the government policy would be futile. *Ellison v. Am. Bd. of Orthopaedic Surgery*, 11 4th 200, 206 (3d Cir. 2021). Without submitting to the government policy, and without a showing of futility, the Individual Plaintiffs have not shown an injury in fact. Other circuits have similarly held that individuals who have failed to apply for a permit lack standing to challenge firearm permitting laws. *United States v. DeCastro*, 682 F.3d 160 (2d Cir. 2012); *Westfall v. Miller*, 77 F.3d 868, 872 (5th Cir. 1996).

The Individual Plaintiffs argue that because foundational Second Amendment case law has borrowed from First Amendment case law, *see Parker v. District of Columbia*, 478 F.3d 370, 399 (D.C. Cir. 2007) ("The protections of the Second Amendment are subject to the same sort of reasonable restrictions that have been recognized as limiting, for instance, the First Amendment."), and because there are First Amendment cases where plaintiffs had standing to challenge permitting requirements without applying for the permits, we should find standing here as well. Plaintiffs discuss two First Amendment cases where a permit denial was not a prerequisite to establish standing. In *A.N.S.W.E.R. Coal. v. Salazar*, an organization challenged the National Park Service's

choice to limit access permits to the Presidential Inaugural Committee for certain D.C. areas around the presidential inauguration. 915 F. Supp. 2d 93, 98 (D.D.C. 2013), *aff'd sub nom. A.N.S.W.E.R. Coal. v. Basham*, 845 F.3d 1199 (D.C. Cir. 2017). The organization had standing by virtue of pleading that it planned to engage in protests of the Inaugural parade, without having applied for a permit. *Id.* at 101. In *Bloedorn v. Grube*, an itinerant preacher had standing to challenge the constitutionality of a state university's permitting requirements for non-university speakers, again despite the fact that he "did not seek a permit from the University." 631 F.3d 1218, 1227 (11th Cir. 2011).

The Individual Plaintiffs have cited an instance of Second Amendment case law referencing First Amendment case law on reasonable restrictions, but they have not indicated an instance of Second Amendment case law adopting First Amendment case law on *standing*, the issue at present. While First Amendment cases have permitted standing for plaintiffs who have not sought permits, Second Amendment cases have not. *See, e.g., Libertarian Party of Erie Cnty. v. Cuomo*, 976 F.3d 106, 121-22 (2d Cir. 2020) (individual who has not applied for a permit lacks standing to challenge firearm permitting scheme); *United States v. DeCastro*, 682 F.3d 160 (2d Cir. 2012) (same); *Westfall v. Miller*, 77 F.3d 868, 872 (5th Cir. 1996) (same). We decline to import First Amendment case law wholesale when the Third Circuit has expressly refused to do so. *Ass'n of N.J. Rifle & Pistol Clubs v. AG N.J.*, 910 F.3d 106, 122 n.28 (3d Cir. 2018).

Moreover, the First Amendment cases from which the Individual Plaintiffs seek to borrow standing analysis are factually distinct. In *A.N.S.W.E.R.*, permit denial was not required for standing in that instance because the plaintiffs sought to challenge conduct that did not involve permits. 915 F. Supp. 2d at 103. In *Bloedorn*, the plaintiff was arrested after previously refusing to apply for a permit. 631 F.3d at 1228. That prior prosecution, coupled with an intention to engage

in the same unpermitted conduct again, created a "credible threat" of further prosecution. *Id.* at 1228-29. Here, the Individual Plaintiffs do not argue that they have faced prosecution. They are "all members of the public," and such a "generalized grievance" is "an inadequate basis on which to grant standing." *Md. Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 219-20 (4th Cir. 2020) (quoting *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 575-76 (1992)).

The Individual Plaintiffs further argue that they intend to purchase firearms without first acquiring an FID or HPP, exposing themselves to prosecution. This argument has been evaluated and rejected by circuit courts. *Parker v. District of Columbia*, 478 F.3d at 375; *Maryland Shall Issue*, 971 F.3d at 218 (a "generalized fear and concern" that the state will enforce a gun permitting regime does not constitute a "credible threat of prosecution" sufficient to confer standing); *Seegars v. Gonzales*, 396 F.3d 1248, 1255 (D.C. Cir. 2005) (state's general interest in enforcing its gun laws was insufficient to confer standing on plaintiffs). The Individual Plaintiffs' wish to buy a firearm without the threat of prosecution is their generalized grievance restated; this wish alone does not confer standing. Ms. Kendrick further alleges that she is personally familiar with long wait times for HPP applications because her husband waited seven months for his, but she does not explain how first-hand knowledge of a grievance could confer standing. For these reasons, we find that the Individual Plaintiffs have not sufficiently pleaded standing. We dismiss them without prejudice.

### ii. Dealer Plaintiff

The Dealer Plaintiff purports to have third-party standing on behalf of its customers. "[O]rdinarily, one may not claim standing . . . to vindicate the constitutional rights of some third party." *Pitt News v. Fisher*, 215 F.3d 354, 362 (3d Cir. 2000) (citations omitted). Under the prudential third-party standing doctrine, a plaintiff has standing to litigate on behalf of a third party

upon a showing of three "preconditions:" 1) the plaintiff himself suffered injury; 2) the plaintiff and the third party have a "close relationship"; and 3) the third party faces a hindrance that prevents it from pursuing their own claims. *Pa. Psychiatric Soc'y v. Green Spring Health Servs.,* 280 F.3d 278, 288-89 (3d Cir. 2002).

Defendants argue that the Dealer Plaintiff has met none of these elements. Regarding injury, Defendants argue that the Dealer Plaintiff's injuries are too speculative. At the pleading stage, we are satisfied with the Dealer Plaintiff's contention that New Jersey's firearms laws impose obstacles that are injurious to firearms sellers. Firearms dealers are tasked with recordkeeping sales and complying with law enforcement reviews of sales.

Defendants lament that state recordkeeping laws overlap with federal laws anyway, so the state recordkeeping law cannot impose a real injury. But the Dealer Plaintiff pleads that the state recordkeeping law comes with its own costs because dealers must verify that they are following the state law in addition to federal laws and because state law subjects dealers to continuous oversight by New Jersey police officers. At the pleading stage, we decline to investigate for ourselves the factual reality of just how redundant state law compliance and federal law compliance might be. Instead, we treat as true the Complaint's allegations that the state laws subject dealers to additional compliance verification and additional police oversight. As alleged, these burdens state an injury.

The balance of the prudential standing analysis is straightforward because the Dealer Plaintiff is a vendor. Courts have bestowed third-party standing on vendors without investigating how "close" their "relationship" is with customers and without regard to whether the third party is hindered in litigating. *See Md. Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 216 (4th Cir. 2020) (collecting cases). A third party's hindrance to pursuing his own claim is not a requirement for

12

vendors challenging the constitutionality of statutes on behalf of their customers "where those statutes are directed at the activity of the vendors." *United States v. Extreme Assocs., Inc.*, 431 F.3d 150, 155 (3d Cir. 2005); *see also Craig v. Boren*, 429 U.S. 190, 195 (1976) ("[V]endors and those in like positions have been uniformly permitted to resist efforts at restricting their operations by acting as advocates of the rights of third parties who seek access to their market or function.").

Here, New Jersey firearms dealers are tasked with recordkeeping and law enforcement supervision. The statutes complained of are directed at vendor activity. This confers third-party standing on the Dealer Plaintiff. We do not share the Defendants' concern that the Dealer Plaintiff is not the "natural party" to bring these claims and that only an individual can sufficiently "zealously advocate" for themselves. The third-party vendor cases like *Craig v. Boren* and their progeny instruct otherwise. 429 U.S. at 195; *Extreme Assocs., Inc.*, 431 F.3d at 155.

### iii. Association Plaintiffs

Three of the Association Plaintiffs (ANJRPC, NJ2AS, and CNJFO) allege to have direct "organizational" standing. All five of the Association Plaintiffs allege to have "associational" or "representational" standing on behalf of their members. Defendants argue that the Association Plaintiffs lack standing because they have not sufficiently alleged injury to themselves or their members. We address each type of standing separately.

#### 1. Standing for the associations themselves (organizational standing)

An association or organization can establish standing "in its own right" if it demonstrates that there is injury to the entity itself. *Warth v. Seldin*, 422 U.S. 490, 510 (1975); *see also Pa. Psychiatric Soc'y v. Green Spring Health Services, Inc.*, 280 F.3d 278, 283 (3d Cir. 2002) (associations may demonstrate standing "by asserting claims that arise from injuries they directly sustain"). An association may demonstrate injury sufficient for standing if the Defendants' actions

13

"perceptibly impair" the association's ability to provide services. *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 285 (3d Cir. 2014) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982)). Associations "may not satisfy the injury in fact requirement by making expenditures solely for the purpose of litigation, nor by simply choosing to spend money fixing a problem that otherwise would not affect the [association] at all." *Id.* (citations omitted).

*Blunt v. Lower Merion Sch. Dist.* is instructive. 767 F.3d at 285. There, an organization of students and parents, having been formed for the very purpose of educating the public on allegedly discriminatory behavior by a school district, did not have organizational standing to sue the school district because fulfilling its mission is not an injury. *Id.* at 285-86. Here, the Association Plaintiffs plead what the organization in *Blunt* did not: that they have purposes and activities beyond changing New Jersey firearms laws. Firearms law education, monitoring, and compliance necessitated by the allegedly unconstitutional firearms laws compel perceptibly impair their ability to do other things.

Defendants argue that this diversion of resources toward firearms law education, monitoring, and compliance is not harm at all because it is in line with the Association Plaintiffs' missions and therefore not injurious. But an organization can have an advocacy-based mission related to the subject of their lawsuit and still experience injury diverting resources toward fighting an alleged injustice. *See Fair Hous. Rights Ctr. v. Post Goldtex GP, LLC*, 823 F.3d 209, 214 n.5 (3d Cir. 2016) (finding standing for fair housing group whose mission to advocate against housing discrimination was frustrated by resource diversion toward fighting alleged Fair Housing Act violations). At the pleading stage, we are satisfied that the Association Plaintiffs have alleged an injury to themselves.[1]

---

[1] Whether the Association Plaintiffs, as non-profit organizations, can possibly state a § 1983 claim *on their own behalf* for the deprivation of the right to bear arms is a separate question that no party addresses.

14

### 2. Standing for the associations' members (representational standing)

An association can also establish standing on behalf of the association's members, if three elements are met. *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343 (1977). *Hunt* states the test for representational standing:

> [A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

432 U.S. at 343. To establish representational standing, the plaintiff association must "make specific allegations establishing that at least one identified member had suffered or would suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 497-98, (2009); *see also New Jersey Physicians, Inc. v. President of the United States*, 653 F.3d 234, 241 (3d Cir. 2011). Speculation that "it is certainly possible—perhaps even likely—that one individual will meet all of these criteria . . . does not suffice." *Summers*, 555 U.S. at 499. Although the association must identify at least one member who has standing, "requests by an association for declaratory and injunctive relief do not require participation by individual association members." *Hospital Council of Western Pennsylvania v. City of Pittsburgh*, 949 F.2d 83, 89 (3d Cir. 1991).

The Association Plaintiffs fail to adequately plead representational standing. They do not allege that their members have applied for a permit, so their members do not have standing to sue in their own right. The only individuals named as members of the Association Plaintiffs are the Individual Plaintiffs who, as explained above, have not sufficiently pleaded standing. The Association Plaintiffs have not demonstrated standing on behalf of their members for the same reasons the Individual Plaintiffs lack standing. We dismiss without prejudice the Association

Plaintiffs that asserted only representational standing and not organizational standing: Firearms Policy Coalition, Inc. and Second Amendment Foundation.

### III.   Municipal Police Defendants' 12(b)(6) Motion

Defendants Ronald Cundey and John Polillo (the "Municipal Police Defendants") move for dismissal pursuant to 12(b)(6) because they are municipal police chiefs whose conduct has not been challenged in the Complaint.

#### a.   Legal standard

In resolving a motion to dismiss for failure to state a claim, under Rule 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

#### b.   Discussion

Defendant Ronald Cundey is the Chief of Police for the municipality where one of the Individual Plaintiffs resides. Defendant John Polillo is the Chief of Police for the municipality where the Dealer Plaintiff is located. They are each named once in the Complaint. The Complaint does not describe any particular conduct by individual Defendants. It appears that they are included in the lawsuit because municipal police forces are tasked with enforcing the challenged statutes. The police provide and process FID applications, cross-check fingerprints with databases, and

16

perform background checks. The Complaint also alleges substantial delays in this process. Because the allegations relate only to enforcement of the statutes, we construe the Complaint against the Municipal Police Defendants as a suit against them in their official capacity.

The Municipal Police Defendants repeatedly point out that the Complaint contains no allegation that the Municipal Police Defendants did or failed to do something. But the Complaint does not have to make specific allegations about the police chiefs' own conduct as individuals in order to state a claim. That is the nature of a civil rights claim against someone in their official capacity. To state a § 1983 claim, a plaintiff must allege two things: first, a violation of a right under the Constitution, and second, that a person acting under color of state law committed the violation. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255-56 (3d. Cir. 1994). The definition of "person" here includes municipalities and other local government entities. *Monell v. Dep't of Soc. Servs. of N.Y.,* 436 U.S. 658, 690 (1978).

Government officials who are statutorily tasked with taking enforcement actions against Plaintiffs are proper defendants in cases challenging the constitutionality of those actions. *Cf. Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 535-36 (2021) (concluding that claims against executive directors of state health agencies are not barred by sovereign immunity because they "may or must take enforcement actions" against the plaintiffs according to the challenged statute). This is the *Ex Parte Young* exception to Eleventh Amendment sovereign immunity for government officials, under which we "need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 324 (3d Cir. 2002) (internal quotations omitted).

Plaintiffs allege that their Second Amendment right is violated by the New Jersey statutes at issue, and that Municipal Police Defendants act under color of state law to enforce those statutes. Plaintiffs seek prospective injunctive relief preventing them from enforcing those statutes. We agree with Defendant Cundey that because we dismiss the Individual Plaintiffs in his municipality for lack of standing, a § 1983 claim against him is not stated. But the Dealer Plaintiff, whose entity is located in Defendant Polillo's municipality, remains, so Defendant Polillo will too.

### IV. Conclusion

The New Jersey State Defendants' motion to dismiss for lack of standing (Doc. No. 34) is **GRANTED IN PART** and **DENIED IN PART**. The Individual Plaintiffs Sandra Kendrick, Carol Kinkade and Nancy Merritt are dismissed without prejudice pursuant to 12(b)(1). The Association Plaintiffs New Jersey Rifle & Pistol Clubs, Inc., New Jersey Second Amendment Society, and Coalition of New Jersey Firearm Owners have adequately pleaded standing to proceed on their own behalf but not on behalf of their members. The Association Plaintiffs Firearms Policy Coalition, Inc. and Second Amendment Foundation are dismissed without prejudice pursuant to 12(b)(1). The Dealer Plaintiff Bob's Little Sport Shop has adequately pleaded third-party prudential standing on behalf of its customers.

The Municipal Police Defendants' motion to dismiss for failure to state a claim (Doc. No. 33) is **GRANTED IN PART** and **DENIED IN PART**. Defendant Ronald Cundey is dismissed without prejudice.

An order follows.

Dated: 2/22/2022                                              /s/ Robert B. Kugler
                                                              ROBERT B. KUGLER
                                                              United States District Judge